# ROCKINGHAM,

## DECEMBER TERM, A. D. 1850.

### DOW v. JEWELL & a.

Infant defendants in chancery being under the peculiar care and protection of the court, a decree affecting their interests will not be made, even by consent, unless the matter be referred to a master to inquire and report whether the decree prayed for will be for their benefit.

But if a decree be made without such a reference, it will be as valid as if the matter had been referred to a master, and he had reported that the decree would be for their benefit.

According to the practice in chancery, no decree is usually made against an infant without giving him a day, generally six months after he comes of age, to show cause against it.

Such a day should be given to infants, to show cause against a decree establishing a parol partition of lands in which they are interested.

Where three persons jointly furnished money, and it was agreed that two of them should purchase land with it, and should own the land in fee in equal moieties, and that the third in consideration of the money she had advanced, should have her wood from the land during her life, and the land was purchased, and the deed taken in the name of one of the two, it was *held*, that no trust resulted in favor of the third party.

Whether upon the division of lands among the heirs to an estate, the deed of one of them, who is a married woman, being invalid because it was executed without her husband, and signed with her maiden name, could be subsequently confirmed by her, *quære?*

But the deed of her husband, after her death, releasing his interest in the land and assenting to the division, and intended to confirm her deed, would not be a confirmation of it, so as to give it validity.

IN EQUITY. The bill was brought by Rufus Dow against Jonathan, Charles, George and John C. Jewell, Munroe G. J. Tuxbury, Mary A. Webster, and her husband, William B. Webster. The bill stated the following case: —

Alfred Jewell, of South Hampton, on the 27th day of December, 1841, conveyed to the orator a piece of land situated in East Kingston, containing an acre and a half, by a deed containing the usual covenants with warranty, and which was duly acknowledged and recorded.

Joseph Jewell, the father of Jacob, Jonathan, and Sally Jewell, many years ago, owned in fee-simple five acres of land situated in South Hampton, at Bugsmouth Hill woods, so called. He died intestate before the month of October, 1795, and the land at Bugsmouth Hill descended to his children, Jacob, Jonathan, and Sally. After his death, and before the month of October, 1795, this land was conveyed by his children to one Ephraim Carter, but the deed has never been recorded, and the orator cannot state its exact date. Jonathan, being the eldest of the children, and more acquainted with business than the others, and the utmost confidence being placed in him by them, received the money for which the land was sold, and with it purchased a piece of woodland, situated in Burnt Swamp, so called, in East Kingston. The Burnt Swamp land was bought with money which these three persons owned jointly, and for their common use and benefit, Jonathan and Jacob to be owners in fee and tenants in common each of a moiety of the land, and Sally to have her wood from the land during her life. With this understanding, Jonathan laid out the money received for the sale of the Bugsmouth Hill land, in the purchase of the Burnt Swamp land, and took a deed of it to himself alone, from one Robert Rogers, dated on the 8th day of October, 1795. This deed has never been recorded, and the orator does not know how the land is described and bounded; but the land described in a deed by Alfred Jewell to him, dated on the 27th day of December, 1841, is a part of the land described in the deed from Rogers.

From the date of the deed from Rogers, until Jacob Jewell's death, Jonathan and Jacob occupied the land as tenants in common, each of them taking from the land such trees and wood as he desired, without accounting therefor to the other, and Jacob frequently asserted in the presence of the respondents or some

one of them, or while he was in the act of taking wood and trees therefrom, that he owned one half of the land. He died in the month of June, 1825, intestate, leaving Dorothy, Barnard, Jacob, Susan, Alfred, James, Eliza, and Joseph Jewell, his children and heirs at law.

On the 14th of September, 1814, Jacob Jewell purchased of one John Shepherd certain pieces of salt-marsh, and took the conveyance in his own name. This land consisted of two tracts, one containing three acres, and the other containing five acres, and was situated in Salisbury, Massachusetts, at a place called " The Barberries."

About twelve or fourteen years ago, Jonathan Jewell called on Barnard Jewell, who was the administrator of the estate of Jacob Jewell, and also upon his brother Jacob, and told them he wished a division of the swamp land made between him and the heirs of Jacob, as he desired to cut some wood and poles thereon. The parties agreed upon a day when the division should be made, and Jonathan with his son Richard, who is since deceased, met them upon the land accordingly. An equal division of the land was made, monuments were erected, and the parties drew lots for the land.. That part of the swamp woodland described in the deed from Alfred Jewell to the orator, dated on the 27th day of December, 1841, fell to the heirs of Jacob Jewell, and was accepted and occupied by them, or by Alfred Jewell, from that time until the date of the deed from Alfred to the orator, and since that time, has been occupied by the orator. On another occasion Jonathan went to Barnard and told him that he (Jonathan) owned one half of the salt-marsh, and was entitled to a deed of it from the heirs of Jacob, and that they owned one half of the woodland, and were entitled to a deed of it from him, and that if they would convey to him one half of the salt-marsh, he would convey to them one half of the woodland. This proposition was communicated to the heirs, and they agreed to it. Jonathan then procured a deed to be made of one half of the salt-marsh to him, which deed was brought by him to the house of Jacob, and there executed by the heirs or a part of them. Jonathan then carried the deed

away, saying that if the heirs would bring a deed from him to them of one half the woodland, he would execute it. Afterwards, Alfred Jewell having become the owner of the woodland on the 1st day of February, 1842, informed Jonathan that he owned it, and requested a deed of it from him, but Jonathan refused to make a conveyance of it.

On the 9th day of May, 1837, Robert Chase (who married Eliza since her father's death,) and his wife conveyed to Barnard and Jacob, all Mrs. Chase's interest in her father's estate.

On the 11th day of January, 1838, the other heirs of Jacob Jewell appointed a committee to divide their real estate among them, which was done, and they have since occupied the land according to the division.

On the 9th day of September, 1842, Dorothy, Barnard, Jacob, Susan, Joseph and James L. Jewell, in pursuance of the division, and for the purpose of carrying it into effect, conveyed all their interest in the woodland, together with other lands, to Alfred. The woodland in Burnt Swamp was set off to Alfred as a part of his share, and occupied by him until his conveyance to the orator, since which time the orator has occupied it.

On the 12th day of March, 1840, Jonathan Jewell conveyed in fee with warranty without any pecuniary or other adequate consideration, all the woodland in Burnt Swamp, also one undivided half of the salt-marsh, together with several other pieces of land to his sons Charles, George, John C. and Richard, (who was then alive, but who is since dead, leaving his father his heir at law,) his grandson Munroe G. J. Tuxbury, and his granddaughter Mary A. Webster. The consideration expressed in the deed was a bond from the sons conditioned to maintain Jonathan and his wife during their lives. The grantees received this deed without paying any adequate consideration therefor, and with a full knowledge of the circumstances under which Jonathan became possessed of the Burnt Swamp land. On the 20th day of August, 1842, Munroe G. J. Tuxbury brought a writ of entry against the orator to recover one eighth part of the woodland, and the action is now pending in the court of Common Pleas.

The bill prays for an injunction to restrain the prosecution of the suit, for an answer, and for general relief.

The defendants demurred to the bill for two causes.

I. Because neither Sally Jewell nor the heirs at law of Jacob Jewell were made parties.

II. Because the orator did not state a case in his bill which entitled him to relief in equity.

The demurrer was argued by *Emery* for the orator, and by *James Bell & Tuck* for the defendants, and an opinion was delivered by the Court upon several questions arising in the case. It was settled that upon the answers and evidence, the money of Jacob was used by Jonathan in making the purchase in a manner which constituted a resulting trust in favor of Jacob, and that the bill contained a sufficient allegation to raise such a trust. That Sally Jewell might show by additional proofs that she was equally interested with her brothers in the title, and might contend on the case as it then stood, that parol evidence could not be offered to show that her interest was other than an equal interest according to the proportion of the money advanced by her.

If the purchase raised a resulting trust for her to the extent of one third part of the land, then the division made between Jonathan and the heirs of Jacob must fail, because it was not made among all those interested, even if there were no other objection to it. But if parol evidence of the contract that she was to have her wood from the land be excluded, the question may arise, whether there is any evidence to show that she was to have any interest, or upon which she can be regarded as a purchaser so as to raise a trust. Assuming the contract to be what the bill alleges, she is still entitled to be heard on the question whether the partition was to her prejudice, and whether any thing is necessary to be done to secure her rights. In any view of the case, therefore, the Court ought not to proceed to a decree unless she is in some way made a party.

The partition is valid, provided Sally had no interest to be affected by it, although it was made by parol, as the estate was a trust arising by implication of law, and within the exception of

the statute. In England, though in general, partition among tenants in common, must be in writing since the statute, chancery will in some instances confirm a parol partition which has been executed, and possession taken accordingly, even in cases which do not involve a trust. A release to Jonathan Jewell was in no way necessary to the validity of the partition. He held the legal title to the whole. On partition he did not need any thing more than the partition itself to confirm his title to the part he took in severalty.

The conveyance by the other heirs to Alfred, was a ratification of the partition, and they need not be made parties to the bill. It appeared that Susan, one of the heirs of Jacob, executed the deed by signing it by her maiden name, " Susan Jewell," and that her husband was not a party to it. The court held, that such an execution did not convey her interest, but that perhaps her confirmation might now make it good.

The defendants do not stand in the position of *bonâ fide* purchasers for a valuable consideration without notice. The agreement to support the grantor and his wife forms the material consideration for the deed from Jonathan to the defendants, and that is not within the principle which protects a *bonâ fide* purchaser without notice. And *à fortiori* it cannot be good against a *cestui que trust* where his land is fraudulently conveyed by the trustee. A purchaser upon such a consideration must look to the title and the equities to which it is subject.

It was decided that the orator might allege in a supplemental bill whatever was necessary relating to the interests of Sally Jewell and Susan Merrill. The orator then filed a supplemental bill, in which the following facts were stated.

At the time of the execution of the deed from the heirs of Jacob Jewell to Alfred Jewell, on the 9th day of September, 1842, Susan was married to William Merrill, who was then, and had been for a long time, absent from her, and did not live with her. In the division of the land a portion was assigned to her, of which she took possession, and afterwards occupied it by herself or her agents, and her husband never interfered with, or attempted to control, her in the management of it. On the 4th

day of May, 1847, Merrill released to Alfred Jewell, all his interest in the woodland. This deed was made for the purpose of confirming the division of the land among the heirs made by the committee, and the deed executed by Mrs. Merrill, by the name of Susan Jewell. Mrs. Merrill died on the 26th day of March, 1843, and after the filing of the original bill, leaving five children, four of whom are minors and without a guardian, but all of whom are willing to submit to the division of the estate that has been made, and to abide by it.

Sally Jewell, and the children of Mrs. Merrill, were made parties by the supplemental bill, which prayed that the orator might have. the same relief against Sally as against the original defendants, and that he might be decreed to hold the woodland in severalty free from any claim on the part of the heirs of Mrs. Merrill.

To this bill the defendant, Tuxbury, demurred, because it did not appear by the bill that the title of Mrs. Merrill to the land had been conveyed to Alfred Jewell, or was held by the orator, and because the remedy, if any, must be by original bill. Because the bill contains no allegations entitling the orator to the relief asked for in the original bill, or to any other relief as against Sally Jewell, and no proffer of security for her rights in the land, and because the relief prayed for cannot be granted consistently. with the maintenance of her rights in the land. Because the orator has not entitled himself to a discovery touching any of the matters contained in the bill, nor can any discovery avail the orator for any purpose for which a discovery is sought against the defendants by the supplemental bill, nor can it entitle the complainant to any relief.

The original defendants filed several answers to the supplemental bill, which were copies of each other. They admitted the execution of the deed by William Merrill as alleged, the death of Susan Merrill, and that the persons mentioned were her children and heirs at law, and were of the ages specified, and that those under age were without guardians. They stated their ignorance of the other matters alleged, and submitted the questions of law arising upon the facts, to the Court. The

Dow v. Jewell.

answer of Sally Jewell was substantially like the answers originally filed, and upon which the opinion of the Court has already been delivered.

At the December term, 1847, a guardian *ad litem* was appointed over the minor children of Susan Merrill. The answer of Nathan Peters, the guardian, admitted the facts stated in the supplemental bill, and stated that the wards were desirous of submitting to the division of the estate of Jacob Jewell, made by the committee before referred to, and that the land should be held in severalty, and they submitted to such decree as the court should deem proper in the premises. William P. Merrill, who is over twenty-one years of age, filed no answer, and as to him the bill was taken *pro confesso*.

Evidence was laid before the court sustaining the allegations in the supplemental bill.

*Emery*, for the orator.

This cause has, upon the merits and the equity of the case, been decided in favor of the orator. There are three questions now remaining to be disposed of.

1. It was contended, that Sally Jewell was interested in the subject-matter in controversy, and therefore should be made a party. She has come in, and her answer does not differ from the others, and is entirely overcome by the original testimony and by that taken since the filing of the supplemental bill, which sustains the case made by the original bill. Her rights to the premises may be shown by parol evidence, that is, the use of her money in the purchase of the land in controversy might create a resulting trust in her favor in one third part of the land. It may, however, be shown by parol evidence, that her money was used under such circumstances and agreements that no trust in the title could result in her favor. *Page v. Page*, 8 N. H. Rep. 187, 195. What then is her right or interest? It is to have her wood from the land in dispute, during her life. This could give her no interest in the title to the premises, or in the premises. She has never had any thing more than a mere debt against Jonathan and Jacob, or a personal claim on them. She

had an agreement with them to furnish her with her wood from the land during her life, and if they refuse or put it out of their power so to do, she would then have a claim against them for damages, that is, the amount of her money expended in the purchase of the land. *White* v. *Carpenter*, 2 Paige, 238, 242, 265. To show a right in or to the estate less than a fee, a writing would be necessary, because it must be matter of special agreement. *White* v. *Carpenter*. A trust arising from an agreement of the parties must be proved by a writing. *Pritchard* v. *Brown*, 4 N. H. Rep. 401. Hence we contend, that she has no interest in the land in controversy to be affected by whatever Jacob and Jonathan might do in regard to it. It is alleged in the original bill, that Jacob and Jonathan were to own the land in fee, each a moiety thereof, and that it was agreed that Sally, for her money, should have her wood from the land for her life. This agreement must be considered like any other agreement between parties, and if either Jacob or Jonathan did not keep it, they would be liable to her for the breach of it.

2. The next question arises upon the division among the heirs of Jacob Jewell. The deed following the division was signed by Mrs. Merrill, with her maiden name, Susan Jewell, and was not signed by her husband; but he has since consented to and confirmed the deed. We contend, that the deed is thus made binding upon the heirs of Mrs Merrill, and upon all concerned. The only object in requiring the husband to sign the deed, is to show that he assents to it, and that no fraud is practised upon him. *Gordon* v. *Heywood*, 2 N. H. Rep. 525 ; *Crane* v. *Thurston*, 4 N. H. Rep. 418 ; *Durant* v. *Ritchie*, 4 Mason, 45 ; *Manchester* v. *Hough*, 5 Mason, 67 ; *Stearns* v. *Swift*, 8 Pick. 536 ; *Doe* v. *Howland*, 8 Cow. 277 ; *Stead* v. *Izard*, 1 B. & P. (N. R.) 312 ; *Mary Portington's case*, 10 Co. 43 ; *Compton* v. *Collinson*, 1 H. Bl. 340.

3. If the Court should be of opinion that the deed is not binding upon the heirs of Mrs. Merrill, then we contend, that as the parties have come into court and put upon the record that they are desirous the division should be confirmed, that they submit to it, and moreover as the parties have for several years occupied the land according to it, and as therefore it is undoubt-

edly for their interest that it should be confirmed, it is compe-
tent for the court to decree a confirmation of the division, and
that as to the land in dispute, the persons claiming under Alfred
Jewell should hold it in severalty. *Thomas* v. *Giles*, 2 Ver-
non, 233; *Ireland* v. *Rittle*, 1 Atk. 541; *Oldham* v. *Hughes*,
2 Atk. 452; *Galliano* v. *Lane*, 2 Sandf. 147.

It is competent for a guardian *ad litem* to submit such a
question as this to the court, and the decree of the court thereon
will bind all parties. 1 Daniel, Ch. Pr. 204, 5. The division
having been actually made between these parties, and possession
taken of the premises, and continued, according to the assign-
ment of the several parcels to each, Mrs. Merrill having executed
the division deed, which was confirmed by her husband, it is com-
petent for the Court to decree, that William P. Merrill and the
guardian *ad litem* for those under age should confirm the division
by executing the necessary and proper papers. This would be
merely carrying out the agreement made by the parties, an
agreement equitably binding upon all. *Galliano* v. *Lane*, 2 Sandf.
147. We can see no technical objection now standing in the
way of a decree in favor of the orator.

*James Bell*, for the respondents.

It has already been determined, that the complainant is not
entitled to a decree without additional allegations and proofs, and
the introduction of new parties. It has been held, that Sally
Jewell is a necessary party to the bill. We propose to inquire,
whether the want of parties and proof on the original hearing has
been supplied, and also to suggest several grounds of law, upon
which, as the case now stands, the plaintiff, as we conceive, is not
entitled to a decree.

If Sally Jewell is now regularly a party, and submits to have
a decree made according to the prayer of the bill, it does not
remedy the defect in the complainant's title resulting from the
fact that one third of the purchase-money of the land in question
was hers. The complainant must make a case according to his
bill, which alleges that Jonathan Jewell held the land after the
purchase in trust for Jacob Jewell. If he became trustee, not

for Jacob alone, but for Jacob and Sally, the complainant must fail; first, because the case he proves is not that made by his bill; and, secondly, because if Sally is one of the *cestuis que trust*, the pretended partition which the complainant alleges and must prove is a nullity. Two of the *cestuis que trust* could of course make no partition without the third. If Jonathan held the property in trust, that trust must have been either one resulting from law, or one arising from the contract of the parties. The latter must of course be by deed, as a parol agreement would be insufficient to create such a trust.

As to Jacob Jewell, the bill appears to allege a resulting trust in his favor, on the ground of contract; and in regard to Sally Jewell, the allegation, sufficiently loose, must be understood to allege a trust in her favor, namely, — the right to take wood, — which could only arise by contract, and which can exist only by a deed or declaration of trust.

If it is to be understood that the bill goes upon the ground that Jonathan Jewell purchased with the money of the three, and took the deed in his own name, the agreement being, that he should hold one half in his own right and one half in trust for Jacob, but the whole subject to the right or easement of Sally to take wood, then it is a case of express, and not of a merely resulting trust, and can be evidenced only by a deed or written declaration. It cannot be sustained as an express trust for want of the necessary written evidence, nor as a resulting trust, because on the complainant's own showing, but one third of the purchase-money was Jacob's, and a trust in half the land could not, therefore, result to him aside from contract.

There cannot be a mixed case of trust partly resulting by operation of law, and arising in part from contract; or if such a case could be supposed, the trust would be void, unless created by writing. See the case, *White* v. *Carpenter*, cited on the former hearing, and referred to by the Court in pronouncing the opinion. 2 Paige, 238.

Part of the money which went into this land was Sally Jewell's. If this was invested in land aside from any special contract, that she should have an interest in the wood, which was part of the

land, then a trust resulted to her in one third.   If it was agreed that her money should be invested, and that she should have a right to take wood, and on that agreement her money was invested, that trust was void, and she perhaps has a remedy for restitution of the money, or would have had, if seasonably pursued.   But, upon the failure of her trust, none results to Jacob either for the whole or one half of the land purchased by her money.   Jonathan has bought the one third of the land with her money, and taken the deed in his own name, and if her trust fails, he must hold this third subject to such remedies as she may have against him for her money.   There is nothing in this to give any resulting trust in any part of this third to Jacob.   Then, if it were to be admitted that a trust results to Jacob to the extent of one third of the land, the complainant's case fails, because he sets up a claim as *cestui que trust*, not of one third, but of one half.   And there is the further unanswerable objection, that the parol partition which was by moieties, failed to take effect if Jacob had but one third.   As the title to this estate depended upon the state of facts as they existed when the purchase was originally made, that title cannot be changed, or the land made to vest in a particular way by any assent or agreement of Sally Jewell, since this bill was filed.   If a trust did not result to Jacob by operation of law immediately upon the conveyance being made to Jonathan, nothing has been done since or can be done to create such a trust, and the complainant's title fails, and his case with it.   Any assent or confirmation now attempted, is also void for the reason, that it can operate only as an express declaration of trust, which can only be by deed, and here is no deed executed by her.

Will it be suggested, that the money of Sally invested in the purchase of land may be considered to have become the joint money of Jonathan and Jacob ?   The answer is, that the facts do not show a loan of the money by Sally to her brothers, nor an agreement that they should jointly invest her money as their own.   If the latter was the agreement she could have no trust, for want of the indispensable requisite of written evidence.   Here, in fact, was no agreement alleged or proved, that her money

40 *

should become in any way the property of her brothers ; but the agreement was, that it should be invested for her in land, in which she should have a certain interest.

There is no warrant here in the evidence for the refinement, that half of the money of Sally became in some way that of Jonathan before or at the time of the purchase. No such change of ownership of the money entered as an element into their agreement, as proved. It would be a mere legal fiction assumed for the purpose of avoiding the effect of the principle enunciated in the case in Paige. If such a legal fiction should be allowed to govern here, it should have done so in that case, and that decision was wrong. It should also be applied in all similar cases. A. buys land with his own money, but under an agreement that the land shall be his and B.'s. The law says that no trust results to B., because no part of the purchase-money was B.'s. B., if he can show a valid contract, may not be without a remedy, but has no interest in the land. But we have only to admit the legal fiction (which we have been endeavoring to combat) and we then find, that by virtue of the contract, half the money was paid as the money of B., and a trust results. The rule never has been so held. It is only from the actual, and not from any supposed or fictitious ownership, that any trust results.

There are, as we conceive, further and more general objections to the establishment of the trust contended for by the defendant. Where there is an express declaration of trust, as in this case, in favor of Sally Jewell, it is well settled that no other can be implied or presumed. 2 Story, Eq. 440, and the authorities there cited. An express declaration controls the rule raising a resulting trust in favor of the party paying the consideration. And parol evidence will be received to rebut resulting trusts. 2 Story, Eq. 442, 443. Hence the rule which would seem to be decisive against the plaintiff's case, (and to which the attention of the Court was not particularly called at the former hearing,) " that parol evidence cannot be received to raise a resulting trust, when the consideration *is stated in the deed* to have been paid by the ostensible purchaser." 2 Story, Eq. 443. See also *Kisler* v. *Kisler*, 2 Watts, Rep. 324 ; *Pitts* v. *Waugh*, 4

Mass. 424 ; 5 Johns. Ch. Rep. 19 ; *Fowle* v. *Haugh*, 3 Mass. 57, (cited 1 Hill. Abr. 214.)　The New Hampshire statute of February, 1791, Stat. 1818, p. 191, prohibiting the creation of trusts, except by writing, does not, like the proviso in the English statute, save from its operation " trusts which shall arise, or result, by implication of law, *or be* transferred or extinguished by an act, or operation, of law ; " but only those that may arise by implication of law *to be* transferred or extinguished by operation of law.

This may be supposed to be an unintentional deviation from the English statute, but it was of course in force, until repealed, as part of the law of the land ; and as the trust alleged in this bill is not even alleged to be of the class, that not only resulted by operation of law, but which would also necessarily shift or be extinguished by operation of law ; it falls within the condemnation of the statute, as not being created by a written instrument.

The peculiarity referred to in the statute of 1791 (by which the present case is to be governed) does not exist in the subsequent legislation of this State upon the same subject.　Laws, 1830, p. 535 ; Rev. Stat. p. 244.

It was further held by the court, in this case, that no conveyance appeared, from Susan Merrill or her husband to Alfred Jewell, as alleged in the bill, and as was necessary to make out the complainant's case.　It was suggested that a deed of confirmation might aid this defect, and for the purpose of making her as well as Sally Jewell a party, a supplemental bill was brought.

But if a deed of confirmation is necessary, none such is produced except from the husband, made after his wife's decease. This might convey his estate by courtesy, but would convey no interest of her or her heirs.　The deed of a *feme covert*, whether executed as in this case by her maiden or by her married name, can convey nothing, unless the husband joins.　No interest of hers passes by a separate deed.　The deed of the husband in this case, could not divest the title of the heirs.　The rules of law as to the validity of this attempted conveyance, are precisely the same in equity as at law. 1 Story, Eq. 15, 69 ; 2 Ib. 238 *n.* ; 1 Johns. Ch. Rep. 530.

The attempted conveyance of Susan Jewell's interest is wholly void, and the complainant's title therefore fails, and with it his case.

The fact that the husband and wife had separated, or that he permitted her to take the income, does not at all change the case. He might have resumed his marital rights at any time. A mere voluntary separation could not operate to restore her legal capacity to convey lands. Her intentions or designs or wishes, so elaborately set forth in the supplementary bill, are wholly impertinent, unless they led to the performance of some thing of which the law can take notice, as effectual acts in relation to this land. Here the complainant takes the testimony of the only son who is of age, to show his assent, but puts in evidence no deed from him. The assent of the minor children can have no operation. It was as necessary to make the heirs of Susan Merrill, parties, as it was to make her a party. And as the complainant in this case was a mere volunteer in purchasing into this lawsuit with presumptive and no doubt actual notice of the state of the title, or what seems more probable, as he took this conveyance to enable his friends, the children of Jacob Jewell, to carry this cause by all becoming witnesses, while on the other hand, the children and grandchildren of Jonathan Jewell paid a full and good consideration for the property without notice, though not strictly within the description of ordinary purchases for a valuable consideration, there is no real want of equity in the plaintiff's failing to succeed on account of the objections which have been noticed.

*Emery*, in reply. The counsel in his argument seems to us to misapprehend the case made by the bill, as well as the case shown by the orator.

The orator does not contend, that a trust arises, or results, to Jacob Jewell on account or by reason of the agreement, but because of the violation of the agreement by Jonathan in taking the deed in his own name, when it was understood and agreed that it should be taken in the names of Jonathan and Jacob, each for a moiety. If A. entrusts his money to B. under the

understanding or agreement that B. will lay out the money in the purchase of land and take the deed in the name of A., and B. lays out the money, but takes the deed in his own name, a trust results to A. for his benefit, not by virtue of the agreement, but because of the breach of the contract by B. This principle governs our case. Jonathan, Jacob, and Sally Jewell own a piece of land, which they agree to sell and to lay out the money in the purchase of another piece, the deed of which, it is agreed, shall be taken in the names of Jonathan and Jacob, so that each shall own a moiety in fee, but Sally's money is to be repaid to her by her being allowed to have her wood from the land during her life. This is the case made by the bill and sustained by the testimony. The orator contends, that by the agreement, both Jonathan and Jacob became indebted to Sally for her money, and the agreement in effect provided the mode of payment, and that when they or either of them should put it out of their power to pay her in the mode agreed upon, they would be liable to pay her the money. It was the money of Sally until the purchase was made, and then it became the money of Jonathan and Jacob, because they, by the agreement, became liable to pay it to her in a certain manner agreed upon by the parties.

If the deed under this agreement had been taken in the names of Jonathan and Jacob, Sally could and would have had no interest in the land, and no trust would have arisen to her, because there was no writing upon the subject. It is upon this view and position of the subject that the statute operates.

It has been before objected, that the allegations in the bill were not sufficient; but it was held, that they were sufficient to raise a trust, the extent of which only remains to be considered.

What, then, as the case is now presented, is the extent of the trust ? The bill alleges, that Jonathan, *under the understanding and agreement* before stated, laid out the money arising from the sale of the land before named, in the purchase of the premises in controversy, but took the deed in his own name alone.

The trust results from his act in taking the deed in his name alone, contrary to the agreement. The matter is to be determined upon the legal rights of the parties resulting from the

agreement; and what are those legal rights? It is submitted, that it has already been shown that, by the agreement, Sally had a legal right to call upon Jonathan and Jacob for her money, but that she was bound to take her pay from the land, in such wood as she might want during her life, unless Jonathan and Jacob should put it out of their power to furnish her the wood, and then they would become personally liable.. She had no right or interest in the land, or control over it, that she could in any way enforce. She, then, was not prejudiced by the division. Such is the effect of the agreement as stated by the bill and sustained by the testimony, and such the extent of her interest in the land, that is, she had *no* interest in it. These views are sustained by *White* v. *Carpenter*, 2 Paige, 238,,242, 265, already referred to; by the case of *Page* v. *Page*, 8 N. H. Rep. 187, 195, and by *Boyd* v. *McLean*, 1 Johns. Ch. Rep. 582.

The quibble advanced because in our statute of 1791, the word "to" was used instead of "or," does not weaken our argument. It was evidently a clerical error or an error of the printer, because when the statutes were revised in 1830, the word "or" is used, and the statutes are otherwise precisely alike. N. H. Laws, 535, (ed. of 1830.) While the statute of 1797 was in force, *Scoby* v. *Blanchard*, 3 N. H. Rep. 170, and *Pritchard* v. *Brown*, 4 N. H. Rep. 397, were decided, and the statute was not considered to apply to them, as it must have done if the construction contended for is to be adopted.

The respondents have stated matters in defence, but have taken no testimony to prove them, neither have they attempted to controvert that taken by the orator. Hence it may be safely inferred that they have no defence, except upon technical grounds. The suggestion that the orator has bought into a lawsuit should not be received with any favor, because his deed is one of warranty, and if his title fails he falls back upon the heirs of Jacob Jewell.

GILCHRIST, C. J. It is the duty of a guardian *ad litem* to ascertain from the infant and his friends, or from other proper sources of information, what are the legal and equitable rights

of his ward. And it is the special duty of the guardian to bring those rights directly under the consideration of the court for decision. An infant's answer is made by his guardian, and is generally confined to a mere submission of his rights and interests in the matters in question, to the care and protection of the court. It is said by Chancellor *Kent*, in *Mills v. Dennis*, 3 Johns. Ch. Rep. 368, that a decree cannot safely be obtained against an infant upon the mere fact of taking the bill *pro confesso*, or upon an answer in form by the guardian *ad litem*. The answer in such cases generally is, that the infant knows nothing of the matter, and therefore neither admits nor denies the charges, but leaves the plaintiff to prove them as he shall be advised, and throws himself upon the protection of the court. A decree upon such an answer would not bind the infant, and he could open it or set it aside when he should become of age. No *laches* can be imputed to an infant, and no valid decree can be awarded against him merely by default. Where infants are concerned, the court will not make a decree by consent, without first referring it to the master, to ascertain whether it is for their benefit. But when once a decree has been pronounced without that previous step, it is considered as of the same authority as if it had been referred to the master, and he had made a report thereupon that it would be for their benefit. *Wall v. Bushby*, 1 Bro. C. C. 484. In the case of *Mondey v. Mondey*, 1 V. & B. 223, the bill prayed for the sale of certain mortgaged property, and a reference was ordered to the master, in case the mortgagees should consent to a sale, to inquire and report whether it would be for the benefit of the infant heir, that the estate should be sold. A similar order was made in the case of *Mills v. Dennis*, 3 Johns. Ch. Rep. 371.

Upon the principles above stated, as the infants are peculiarly under the care and protection of the Court, we shall order that it be referred to a master to inquire and report to the Court whether the partition in this case is for the benefit of the infant heirs of Susan Merrill.

Albert R. Hatch, Esq., the master appointed by the Court,

subsequently made a report, from which it appeared that it would be for the benefit of the infants that the partition should be established.

GILCHRIST, C. J. All the facts at present material to the interests of the parties, and which they desire to submit to us, being now before us, the questions arising in the case may now be determined.

It is clear, that there was no resulting trust in favor of Sally Jewell. A simple resulting trust exists where land is purchased in the name of one person, and the consideration is paid by another. But such is not the present case. It was agreed that Jonathan and Jacob should own the land in fee, and that Sally, in consideration of the money she had advanced towards the purchase, should have her wood from the land during her life. Whatever interest she had was founded on the agreement or declaration of the parties, and did not arise by implication of law. And whenever a trust is founded upon the agreement of a party, a writing is essential. *Pritchard* v. *Brown*, 4 N. H. Rep. 401. The trust which results to the purchaser by operation of law, must be a pure, unmixed trust of the ownership and title of the land or estate itself, and not an interest in the proceeds of the land, nor a lien upon it as a security for an advance or other demand, nor an equity or a right to a sum of money to be raised out of the land, or upon the security of it. These rights are the subjects of the contracts or agreements of the parties, and may form the substance of express trusts, but they require for their subsistence that the title and legal estate of the premises which yield the aliment that sustains them, should reside, not nominally, but potentially in the trustee. The sole operation of pure and simple trusts is to vest the estate in the actual purchaser, in exclusion of the nominal grantee, and not to regulate the equitable rights and interests of those for whose benefit the legal owner may be under a moral obligation to hold or apply it. *White* v. *Carpenter*, 2 Paige, 238. The trust must be of an aliquot part of the interest in the property. Ibid. 240. When an estate results by implication of law, the title and legal estate

of the whole, or of some aliquot part of the whole, must vest in the party to whom it results. Ibid. A resulting trust cannot be raised in favor of a person by the mere payment of the purchase-money, if it is not the intention of either party that the legal estate should vest in him. Ibid. 265.

Now Jonathan and Jacob Jewell agreed with Sally, that for her portion of the money invested in the land, she should receive her wood during her life. The parties intended not that the legal or equitable estate should vest in her, but in the others. Instead of any estate, instead of any interest in the land, she accepted their promise that she should have her wood. She, then, had no interest to be affected by the partition, and as regards her, it must be held to be valid. The promise to her is as binding, after the title to the land has passed from her brothers, as it was while they retained it.

As to Mrs. Merrill's deed, it was suggested when the former opinion was delivered in this case, whether her confirmation might make it good. It has been held, that the acknowledgment of a deed executed by a woman during her marriage, after the death of her husband, may in some cases amount to a redelivery of it, and so render it valid. In *Goodright* v. *Straphan,* Cowp. 201, a man and his wife being entitled to the reversion of a house in right of the wife, by deed executed by the husband and wife, conveyed it to a person by way of mortgage. After the death of the husband, the wife, by three separate papers under her hand, acknowledged the mortgage. The court held that these papers were equivalent to a redelivery of the deed. As in England, in general, the deed of a married woman is invalid, this case is an authority for the position, that it is, notwithstanding, capable of confirmation, or of something tantamount to it. But see *Ela* v. *Card,* 2 N. H. Rep. 175.

But, however the law might be held if Mrs. Merrill were living, and should confirm her deed, or attempt to do so, her husband cannot by a deed executed since her decease, give any validity to her conveyance. If her deed could be confirmed, it must be by her alone. The only effect of his deed would be to transfer to the grantee such rights to the land as he acquired

by the coverture, and her title to the land descended to her children.

We come then to the consideration of the question, whether a decree should be made establishing the partition against the infants, and if so, how far it will bind their estate? It seems clear that the partition should be established. The guardian *ad litem*, to whom their interests are intrusted, assents to it on their behalf, and the master has reported that it will be for their benefit, and nothing of a contrary tendency has been shown in the progress of the cause.

It is said by Chancellor *Kent*, in *Mills* v. *Dennis*, 3 Johns. Ch. Rep. 368, that it was the ancient and has been the settled practice in chancery, that no decree should be made against an infant without giving him a day, which was usually six months after he comes of age, to show cause against it. That was a case of a bill to foreclose a mortgage. In *Napier* v. *Lady Effingham*, 2 P. Wms. 403, which was a bill to be relieved against a conveyance improperly procured from the plaintiff's ancestor, Lord Chancellor *Parker* said, that all decrees against infants gave them six months after they came of age to show cause. And the law is thus stated in *Cary* v. *Bertie*, 2 Vernon, 342. It is said in *Eyre* v. *Countess of Shaftesbury*, 2 P. Wms. 120, that in all decrees against infants, even in the plainest cases, a day must be given them to show cause when they come of age. In 2 Kent's Com. 245, the author says, that the decree in ordinary cases would be bad on the face of it, and ground for a bill of review, if it omitted to give the infant a day to show cause. But the decisions on this point do not all harmonize with each other. Lord *Hardwicke*, for instance, in *Sheffield* v. *The Duchess of Buckingham*, 1 West, 684, defined the practice of his time, saying that he took it to be the course of the court not to give a day unless a conveyance was directed either in form or substance. Some alteration has been made in England in the law in this respect, by an act of Parliament passed 1 Will. 4, which renders it unnecessary to give the infant a day to show cause where the legal estate is directed to be sold for the payment of debts, but in other cases the law remains as before.

Since the passage of that act in *Price* v. *Carver*, 3 Myl. & Cr. 162, Lord *Cottenham* said that all cases of foreclosure and partition, and all others where a conveyance is required from an heir, except those in which the parol would demur at law, are cases in which a day is given. *Attorney-General* v. *Hamilton*, 1 Madd. 214; *Agar* v. *Fairfax*, 17 Vesey, 545, 554. The last cited cases were bills in equity for a partition.

The present bill is for the purpose, substantially, of enforcing a parol partition of lands, which has been executed, and possession taken accordingly. It has been held, that partition between tenants in tail, though only by parol, shall bind the issue. *Thomas* v. *Gyles*, 1 Vern. 233. In *Ireland* v. *Rittle*, 1 Atk. 541, the Lord Chancellor said, "where there has been a long possession and an agreement for owelty of partition, this Court is strongly inclined to quiet the enjoyment of such estate." This case, therefore, comes within the principle stated by Lord *Hardwicke*. A decree, establishing the partition, would have the effect of the conveyance of the estate of the infants. We shall therefore decree that the partition under which the orator claims one half of the Burnt Swamp land, divided and severed, be established; that the defendant Munroe G. J. Tuxbury be enjoined from prosecuting his suit to recover one eighth part of the land of the orator; and that this decree be binding on the defendants, the infants, unless on being served with *subpœna*, they shall within six months after they shall attain the age of twenty-one, show to this court good cause to the contrary.