## NATHANIEL W. ELA *vs.* THOMAS CARD *et al.*

The execution of a deed by *femes covert*, unless they are joined in it by their hus-
bands, also, is not binding, except the deed be a release of dower.

The declaration on a deed of covenant, thus executed by some of the covenantors,
is good, though it omit to count against those *femes covert* as defendants.

A clear general description of the premises in a deed, is not controlled by any sub-
sequent expression of doubtful import in respect to any particular.

If a covenant of seisin be broken as to part of the land conveyed, the amount
recovered for the breach will be such a proportion of the whole consideration
and interest, as the value of that part bears to the value of the whole.

THIS was an action of covenant.

The declaration alleged, that the defendants, on the 25th
of October, A. D. 1808, and also *P. K.* and *E. F.* then *femes
covert*, executed to the plaintiff a deed of lot No. 14, in Ossi-
pee, and among other things covenanted, that they were
seized in fee of said lot, when in fact they were not.

An issue having been joined on a plea of general per-
formance, it was tried here February term, A. D. 1819;
when the deed mentioned in the declaration was duly prov-
ed, and appeared not to have been executed by the hus-
bands of *P. K.* and *E. F.*

The description of the land conveyed, was " the whole
" lot No. 14, containing 500 acres by lot or grant, be
" the same more or less; which lot was the original right of
" *Thomas Wallingford, Esq.*"

It further appeared, that a series of deeds from *Walling-
ford* to the defendants existed, containing a similar descrip-
tion of the premises; that *W.* was one of the sixteen Maso-
nian proprietors; that Ossipee, being within their grant,
and on the 3d of March, A. D. 1775, being divided among
them, lot No. 14 was drawn to his right or share; but that,
on the same occasion, a vote passed, declaring, that " each
" proprietor, to whose right or share any of the said 500 acre
" lots shall be drawn, shall hold in severalty only 400 acres
" thereof, and that the remaining 100 acres belonging to each
" of said lots, shall continue in common and undivided, to
" be disposed of for the encouragement of settlers, or any
" other purpose the proprietors may think proper."

A committee of four persons was then apppointed to put
settlers on the 100 acre lots undivided, in such manner as

Ela
*vs.*
Card et al.

might be deemed best, and were also empowered to execute deeds of the same to the settlers.

The undivided 100 acres in lot No. 14, was not occupied till the year A.D. 1800, and no deed of it was ever executed, except a deed by two of the committee in 1799.

Under that deed, it was now claimed adversely to the plaintiffs, and was worth about $225.

Upon these facts a verdict was taken for the plaintiff for $22 12, subject to be amended or set aside according to the future opinion of the court.

*Eastman*, counsel for the plaintiff.

*Crosby*, for the defendant.

WOODBURY, J. *pro curia.* This action is properly brought against the defendants alone ; because, as a general principle, the signature of *femes covert* to a deed, which is not executed by their husbands also, can pass no interest, and is in law a mere nullity.(1)

(1) 1 Chitt. Pl. 479.—15 John. 483.—13 Mass. Rep. 189.

Perhaps the only exceptions are, when she signs under a power from another, and when, under our statute and usages, she signs a deed releasing her dower. 1 *N. H. Laws*, 193.—*Colonial Charters*, 99.—7 *Mass. Rep.* 20.—2 *Inst.* 673. —1 *Hen. Bl.* 343.—2 *Wils.* 1.—10 *Coke* 42, *b.*—*Com. Di.* " *Baron & Feme*," *H. & G.* 4.

As no other question concerning the declaration and pleadings has been raised, we shall next examine whether upon the facts reported, the covenant of seisin appears to have been broken.

When the defendants made this covenant, they were seized of all the title in lot No. 14, which *Wallingford* had formerly owned. For no adverse possession of sufficient length to bar their entry had then existed ; and the deed of 100 acres in No. 14, which was executed by only one half of the members of the proprietary committee, could pass nothing. 1 *Bos. & Pull.* 229.—13 *John.* 314, 460.—11 *Mass. Rep.* 185.

But *Wallingford* never owned the whole of lot No. 14. He was seized of only 400 acres of it in severalty, and of only one-sixteenth of the other 100 acres of it in common.

The remaining fifteen-sixteenths, being equivalent to 93 acres and three-fourths of an acre, belonged to the other proprietors ; and as a substitute for their interest in this lot, *Wallingford* retained an interest of one-sixteenth in the reserved 100 acres in each of the other 500 acre lots. It follows, therefore, that if the language, used by *Wallingford* and the defendants in their conveyances, purports to grant the whole lot No. 14, they have attempted to sell more land than they owned in said lot, and the defendants are liable upon their covenants.

The first clause in the description of the premises in the deed is, " the whole of lot No. 14." Had the description here ended, it would have been impossible to raise a doubt, that all of the lot was attempted to be conveyed. The next clause, " containing 500 acres by lot or grant, be the same " more or less," does not, upon a fair construction of it, vary the meaning, which would be attached to the first clause, if standing alone. Because " the whole lot No. 14" was supposed and intended in the survey to contain 500 acres ; but as the survey might prove in some degree inaccurate, the words " more or less" are added. Not that the grantor intended to restrict the former clause and sell " more or less" than " the whole of lot No. 14" ; but only that his covenant should extend to the simple fact, that, by " lot or grant," the whole of No. 14 contained 500 acres, without engaging that upon a new survey, the whole lot might not prove to contain " more or less" than that quantity.

The same may be remarked of the only remaining clause in the description, " which lot was the original right of " *T. W. Esq.*" This was not intended to restrict the former clauses so as to pass only the interest of *T. W.* in lot No. 14, be that interest more or less ; but merely to identify the lot before described, by adding that it was the same lot, which was drawn to his right.

But it seems to have been forgotten when the deeds were executed, that, on the same day this lot was drawn to his right, his interest in it was limited to 400 acres in severalty, and to one-sixteenth in common of the remaining 100 acres.

23

Had there been conveyed by him and the defendants all his interest in all the lots then drawn, the plaintiff would not have suffered; because he would have obtained one-sixteenth of each of the reserved 100 acres in the other lots, unless they had previously been conveyed by at least a majority of the committee. But now, for aught which appears, *W.* and the defendants have been paid for the whole of lot No. 14, when they had no interest whatever in 94 3-4ths acres of it; and when *W.* at least may still retain an interest equal to 94 3-4ths acres in the other sixteen lots drawn in March, A. D. 1775.

Considering, therefore, the clearness of the first general clause in the description of the premises; and that the subsequent ones, if they do not fortify it, are at most of doubtful import concerning certain particulars, we think, that the deed must be construed to embrace " the *whole* of lot No. 14." *Munson vs. Parker*, Dec. 1814, *Hills. ss.*—6 *Cranch* 237.—4 *Mass. Rep.* 196.

But, as all the interest of *W.* in the whole lot, both undivided and in severalty, would pass to the plaintiff,(1) the damages recovered must be limited to the 15-16ths of the 100 acres. Thus limited, the proper measure of damages is the consideration paid for that 15-16ths, and interest upon the same from the date of the deed. 4 *John.* 1.—3 *Caines* 111.—*Justin. In.* 607 *note.*—4 *Dall.* 441.—2 *Mass. Rep.* 437, 461.—4 *Mass. Rep.* 108.—8 *Mass. Rep.* 244.

Where the plaintiff has entered, received profits, and been evicted, perhaps, as he is liable for those profits not beyond six years, the interest should be restricted to that period.(2) Perhaps, too, a case might arise, where the plaintiff ought to recover more than the consideration and interest; where the plaintiff is an assignee, [who, it is said, may sue on this covenant. 4 *Maul. & Selw.* 53.—5 *Taunt.* 418.—15 *John.* 489, *note.*—2 *Wheaton* 63, *note*] and has made expensive improvements, without having been in possession long enough to be allowed the value of them by the owner of the land, under our statute concerning " betterments."

There may be some difficulty in ascertaining what portion of the consideration was paid for the 15-16ths of the reserved 100 acres, as the whole of lot No. 14 cannot be of an uniform value. But the true mode will be to ascertain, first, what proportion the value of this 100 acres bears to the value of the whole lot. Then take the amount of that proportion of the whole consideration paid; and fifteen-sixteenths of that amount, with interest on the same, as before mentioned, should constitute the verdict.