ORLIN HIBBARD *v.* HIRAM L. HURLBURT.

GRAND ISLE,
January,
1838.

A. devised all his real and personal estate to his wife, during her life,— pecuniary legacies to his eldest son, and eldest daughter, to be paid at his wife's decease,and charged said legacies upon lands,which he devised to his two youngest daughters, subject to the life estate of his wife, and devised other lands to his youngest son, upon condition, that he pay to another son $100, at the decease of his wife;—

Held, that the wife took a life estate, in *all* the real estate, and that the youngest son took the land devised to him, subject to such life estate.

Where P. claimed a life estate in land, and S. claimed the fee adversely to P., and both claimed under the same devise, and P. by deed leased the land to H. while S. was in possession, and afterwards S. deeded the land to W. *subject to P.'s life estate;—*

Held, that the deed from P. to H. was not void, by reason of S. being in possession, claiming adversely to P. at the time of the execution of P.'s deed to H. and that the assignee of W. could not avoid it.

Where a description in a lease is " all the tracts, pieces and parcels of land lying and being in the tows of G. and N. which were left to me by my late husband," which included the land in controversy, was followed by the additional words of description, "and being the farm on which I now live and occupy."—Held, that this additional description, although inconsistent with the description preceding, did not control it.

TRESPASS, *quare clausum fregit.*

Plea—Not guilty and issue to the country.

Upon the trial in the county court, the plaintiff offered in evidence a deed from Horace Wadsworth to himself, of the premises on question, dated April 29, 1834, and proved that he took possession of the land under said deed, in the same month of April, 1834, which possession had been continued to the time of the trial, and that the defendant, in February 1835, and before the issuing of the plaintiff's writ, committed the trespass complained of.

The defendant then offered in evidence a deed from Robert Merriam to one Andrew Hazen, dated April 7, 1815, conveying the same land, which was admitted, and also proved that the said Andrew went into possession of the premises under said deed, more than twenty years since. The defendant also read in evidence a copy of the will of the said Andrew, who devised and bequeathed the use of *all his real and personal property* to Polly Hazen, his wife, during her life. He also gave pecuniary legacies to his eldest son and eldest daughter, to be paid at the decease of the said Polly, and charged the payment of them upon certain real estate, which he devised to his two youngest daugh-

ters, subject to the life estate of said Polly. He next devised certain other lands, among which is the *locus in quo,* to Spelman Hazen, his youngest son, upon condition, that the said Spelman should pay Goodrich Hazen, another son, one hundred dollars at the decease of said Polly.

The defendant further offered in evidence a deed from Spelman Hazen to Horace Wadsworth, dated April 16, 1834, which conveyed, among other lands, the land in question, and the description of which is, in part, as follows ;— "including twelve acres of land heretofore devised to me by "will from my father Andrew Hazen, subject to a life estate "in my mother, Polly Hazen ;" and also a lease from the said Polly Hazen to the defendant, dated April 18, 1832, of "all "the tracts, pieces and parcels of land lying and being in "the towns of Grand Isle and North Hero, which was left "to me by my late husband, Andrew Hazen, and being the "farm I now live on and occupy ;"—to have and to hold the said demised premises, during the said Polly's natural life, and proved that the said Polly was still living.

The plaintiff then insisted, that the land in question was not included in the lands so leased, and offered to prove, that, at the time of the execution of the lease, said land was not, and never had been occupied by said Polly, and that it was not a part of her farm ; that Spelman Hazen was, at that time, in possession of the premises and continued in possession till he deeded to Wadsworth, claiming the same in his own right in fee. To this evidence the defendant objected and the court rejected it.

The county court directed the jury to return a verdict for the defendant, and the plaintiff excepted.

*Smalley & Adams,* for plaintiff.

The question of title must depend upon the true construction of Andrew Hazen's will.

By the last clause in this will, the testator devises the land in question, without restriction, to his youngest son, Spelman Hazen, on condition that he should pay to his eldest son, Goodrich, one hundred dollars, at the death of his wife, Polly Hazen. The condition being subsequent, Spelman Hazen took a vested estate in fee simple, immediately on the death of the testator.

The only clause, in the will which favors the claim of the

defendant, is the first, in which the testator, in general terms,
bequeaths to his wife, Polly Hazen, the use of all his real
and personal property, during her lifetime. This sweeping
bequest is manifestly insonsistent with the specific devise to
S. Hazen, and the question arises, which clause of the will
must prevail.

I. The rule of law is well settled, that of two inconsistent
clauses in a will, the last must prevail, as being the final de-
termination of the testator. This rule of construction has
been acted upon since the time of Lord Coke, and the reason
of the rule is recognized by Parsons, C. J., in the case of
*Davis* v. *Swan,* 4 Mass. R. 215. When it is considered
that there was a large real estate for this rule to operate upon,
independent of the small parcel given to S. Hazen, and that
this was charged with the payment of a considerable legacy
to the eldest son, the presumption is strong, that the testator
intended to devise an estate in fee to Spelman. *Westcott* v.
*Cady,* 5 Johns. Ch. R. 334. *Brant* v. *Wilson,* 8 Cowen, 56.
2 B. C. 381. 2 Coke Litt. 760. 6 Cruise's Digest, 133.
Toller on Executors, 339. 1 Roberts on Wills, 353, note
349. *Sims* v. *Doughty,* 5 Ves. 243. *Constantine* v. *Constan-*
*tine,* 6 Ves. 100. *Wykham* v. *Wykham,* 18 Ves. 395, 421.
*Leicester* v. *Biggs,* 2 Taunt. 109. *Coryton* v. *Helyer,*
2 Cox, 340. *Sherratt* v. *Bentley,* 7 Cond. C. R. 312.

II. The devise to S. Hazen was specific, and must have
effect upon the settled rule of construction, that a specific
devise to one person forms an exception to a general devise
to another, contained in a preceeding clause of the will.
*Strong* v. *Mervin,* 2 Burr. 920. *Malin* v. *Malin,* 1 Wend.
669, 693.

Admitting, however, that the premises in question were
devised to Polly Hazen, still the defendant took no estate in
them by virtue of his lease from her.

1. The *locus in quo* is not embraced in the lands descri-
bed in the lease.

2. It appears by the case that Spelman Hazen was in pos-
session of the premises, claiming the same in fee, at the time
of the execution of this lease. This adverse possession of
S. Hazen renders this conveyance void, as against him or his
grantee, under the act of 1807, Stat. 171.

*H. R. Beardsley,* and *S. S. Brown* for defendant.

1. The first object in the construction of all contracts is, if possible, to give effect to the intention of the parties, and in order to do so, it is necessary, at least in part, to resort to the language employed by the parties themselves.

Now, why should Polly Hazen employ the words "all the tracts, pieces, and parcels of land in Grand Isle and North Hero," unless she meant something by them? Unless she meant to embrace all the lands, which were left her by her husband, it was certainly unnecessary to employ this phraseology, and was introducing unnecessary confusion, if she meant nothing by it.

But, secondly, the lease cannot be satisfied without embracing more than one piece of land in North Hero. The lease says "tracts, pieces, and parcels of land in Grand Isle and North Hero." From this it is obvious that more than one piece of land in North Hero was intended, and to say that these words mean but one piece, is doing violence to the sense.

If this view be correct, there can be no doubt that, by the first part of the description, the land in dispute is embraced. There is no uncertainty or ambiguity about it, but it is reduced to an absolute certainty. If so, and the doubt or ambiguity, as it must be in this case, is created by a subsequent clause in the description, it is a *patent* and not a *latent* ambiguity, and cannot be explained by parol evidence. The rule of construction is this—If the first part of the description is unambiguous and sufficiently certain, as in this case, it must stand, and whatever is subsequently thrown into the description, repugnant to the first part, must be rejected.

In *Conally* v. *Vernon,* 5 East. R. 51, it is laid down that when there is a grant of a thing sufficiently certain, the addition of an allegation false or mistaken will not frustrate the grant, and to the same effect are all the authorities. *Paul* v. *Paul,* 2 Burr. R. 1089. *Goodright* v. *Pears,* 11 East. 58. 2 W. Bl. R. 930. 1 Cowp. R. 94. *Humphreys* v. *Roberts,* 7 Com. Law R. 150. 1 Wend. R. 549. 7 Johns. R. 228.

Now, by the first part of the description, all the land, mentioned in the will of Hazen, is conveyed. The latter clause, then, being directly contradictory and repugnant to the first part, must be rejected.

2. Had the testator intended to give to Spelman the land in fee, he would not have first carved out a particular estate in the same land for Polly Hazen, his wife, nor would he have postponed the payment of the legacy, chargeable upon the land, till after the decease of his wife.

In order to create a *remainder* it was not necessary that it should have been by the same clause in the will, which carved out the particular, or life estate of Polly Hazen. If the *remainder* is created by the same instrument which creates the particular estate, it is sufficient.

Nor can the plaintiff derive any aid whatever from the general rule in the construction of wills, that latter clauses and words shall govern and control former ones. For there is nothing in this case for that rule to operate upon or apply to.

There is nothing in that part of the will, creating this interest in Spelman Hazen, inconsistent with, or contradictory to that part, which creates the life estate of Polly Hazen.

The opinion of the Court was delivered by

Phelps, J.—The first question raised in this case involves the construction of the will of Andrew Hazen. The testator gives, in the first place, a life estate to his widow, Polly Hazen, in "all his real and personal property." He then bequeathes certain legacies to the children, charging them upon his real estate,—then devises a portion of his real estate, thus charged, to two daughters, and lastly, another portion, charged with certain legacies, payable on the decease of his widow, is devised to his son Spelman Hazen, from whom the defendant claims title. This last devise includes the land in question. The devise to his two daughters is expressed to take effect at the decease of the widow, when her estate in the land determines. The devise to Spelman makes no mention of the life estate of the widow.

Upon this will it is argued, that Spelman Hazen took an estate in fee under the last clause, or, in other words, took the land unincumbered with the widow's life estate ; and this upon the ground that, of two inconsistent bequests or clauses of a will, the latter supersedes and abrogates the former.

Without stopping to inquire into the propriety of this rule, but admitting it as good law, we doubt its applicability to this case. The rule is to be applied only in cases of absolute repugnancy, that is, where the two clauses cannot

be made to stand together.   It is a well settled rule of con-struction that the whole instrument must be taken together. This rule requires no argument nor authority to sustain it. Each clause is to be regarded as qualified by others having reference to the same subject, and the intent is to be gather-ed from the whole.   If then, by any rational construction, the several parts can be made to harmonize, and to consist with the obvious general intent of the maker, there can be no good reason for rejecting any part, or denying to it its le-gitimate effect.   Is this then a case, where a part of the will is to be rejected for repugnancy, or a case where all the parts of the will may be consistently sustained, by giving to each its natural meaning and effect ?

We think it is the latter ; unless, indeed, it can be made out, that there is repugnancy in the testator's giving a life es-tate to his widow, with remainder to his children.   Of his intention, in this case, to create both estates, there can be no doubt ; and that intention must be effectuated, unless there be a legal impossibility that they should subsist together.

Another exception, however, is taken in this case, and it is, that the judge should have admitted the evidence of ad-verse possession in Spelman Hazen, at the date of the lease from the widow to the defendant.

It is to be borne in mind, that Andrew Hazen is the com-mon source of title,—the defendant being the lessee of the widow of A. Hazen, and claiming a life estate under the will, and the plaintiff being the grantee of Wadsworth, who derived his title from Spelman Hazen, who claims under the same will.   The widow's lease to the defendant is dated April 18, 1832, and Spelman's deed to Wadsworth the 16th of April 1834.

By this last deed, the premises in question are conveyed to Wadsworth, " subject to a life estate in my mother Polly Hazen."   As Wadsworth took under this deed a qualified estate only, that is to say, the remainder only, and as his deed specifies the life estate of the widow, as the particular estate upon which the remainder depends, we see not how he, or his assigns, can be permitted to question the right of the widow, or of her lessee, whose lease was in existence at the date of the deed.

But it is insisted, that if Spelman Hazen was in posses-

sion, claiming adversely to the widow, at the time of her lease to the defendant, that lease is void under the statute, as against him, (Spelman) or his assignees. The statute, in terms, makes the deed void, but its practical operation is, like that of the statutes against fraudulent conveyances, to render the deed voidable by those, for whose protection the statute was enacted. It never was supposed, that a conveyance to the party in possession, and in confirmation of his title, was within the statute, nor can it be admitted that such deed is void, in any case, where the outstanding title becomes united with that of the party in possession, in such a way as to combine the two, in one title, in any person claiming under both. To illustrate this position, we will suppose A. to be in possession of a tract of land, to which B. claims title adversely to A.—B. conveys to C. This conveyance from B. to C. is void or voidable as to A. by force of the statute. But if C. conveys to A. then the defect is cured, and A. may set up the deed as a good and valid conveyance of B's title. The case would be the same, if A. convey to C. in which case C. might stand upon B's title, as against a subsequent grantee of A. or B. or against a stranger. The reason is, that the voidable deed becomes, in such cases, auxiliary to the title of the party in possession, and is no longer within the spirit or purpose of the statute.

The application of this doctrine to the case now under consideration is obvious. When Spelman Hazen comes to recognise and submits to the right of the widow, and conveys his estate subject to her life estate, the conflicting titles become united and blended. He parts with his own entire interest, and, at the same time, restricts his grantee from contesting her right; thus engrafting her life estate into his title, and confirming her lease; for as she would be estopped from all claim in derogation of her own lease, the whole proceeding would enure to the benefit of her lessee, the defendfendant. We are, therefore, of opinion, that the evidence of adverse possession, in Spelman Hazen, was properly rejected, as, upon no supposition, of which the case admits, could the defendant be permitted to avail himself of any conflict between Spelman and the widow, which may have subsisted previous to the conveyance to Wadsworth, by which the conflicting claims are united in one title.

GRAND ISLE,
January,
1838.

Hibbard
v.
Hurlburt.

Another point is made in the case, and that is, that the lease from Polly Hazen to the defendant does not include the land in question. This point was determined on the last circuit, and of course is not much relied on here. But as that decision has not been reported, it may be proper to explain the view taken of this point, on that occasion. The description in the lease is this ; " all the tracts, pieces, and parcels of land, lying and being in the towns of Grand Isle and North Hero, which were left to me by my late husband Andrew Hazen." The description thus far includes the land in question. But the lessor adds, " and being the farm I now live on and occupy." It is alleged that the land in question is no part of the farm, on which the lessor then resided.

Upon this statement, the question arose, whether the latter clause was to be regarded as qualifying and restricting the former, and thus excluding this land from the general description, or as a matter merely of further description, introduced for the purpose of more particularity, and found not to consist with what preceded. We then considered it of the latter kind, and held that the last expression did not operate as an exception of any thing which was included in the preceding clause.

We know of no abstract rule, of universal or even general application, which would, of itself, solve the doubt. The intention of the party, as gathered from the instrument itself, is the polestar of construction, and as that intention is to be gathered from the language used, as well as the particular purpose of the instrument, it necessarily follows, that when an incongruity is found to exist, it must be disposed of by the light afforded by the particular circumstances of the case.

In this instance, the comprehensive description, used in the outset, seems to exclude the idea of an intention to make the exception, and the latter clause, " and being," &c., evidently implies that, in the mind of the party, the import was the same as that of the preceding description. At the same time, the expression, " the farm on which I live," seems too loose and indefinite to create a specific exception, more especially, as, in her mind, the several pieces of land, being situated in the same vicinty, might have been comprehended

in that description. At all events, had it been intended to make the exception, it is hardly possible that so definite a general description should have been given, and if it had been, that so loose and unsatisfactory a mode should have been adopted to create the exception.

GRAND ISLE,
January,
1838.

Hibbard
v.
Hurlburt

Judgment of the County Court affirmed.