## Drew *v.* Drew *& a.*

D. devised " all my homestead farm in Dover," " being the same farm whereon I now live," " and the same that was devised to me by my honored father." *Held*, that the last clause purports to be an additional description of the homestead farm.

Where a distinct and certain description of property devised, purports to be of *all* or *the whole* of the property, any additional description, apparently designed to apply to the same property, but which proves to be only partially true, will not be construed to restrict the devise to a portion of that property, but the whole will pass. *Aliter*, if the additional expressions purport on their face to be designed as qualifications or restrictions of a preceding general description.

A devise of " *all* my homestead farm in D., being the same farm whereon I now live, and the same which was devised to me by my honored father," will pass the whole of the homestead farm, though it appears that a part of it was not devised by the father.

ISSUE on a petition for partition sent from the superior court.

In 1765, Elijah Drew conveyed the tract of land, of which partition was prayed, to Staten Austin. At the time of this conveyance, this tract formed a part of said Drew's homestead farm, and was taken out of it in such a way as to leave it surrounded on all sides by the remaining parts of the farm, and without any access to it except over the farm.

Austin remained the owner of this tract till his death, in 1801. A year or two after his death, it was sold by his administrator, according to law, to William Drew, a son of said Elijah. In 1811 Elijah Drew died testate, and by his will devised all his real and personal estate to his said son William Drew, after payment of certain legacies to his other children. At the time of his death he was the owner of the portion of his original homestead farm remaining after the conveyance of this tract to Austin, which was then owned by his said son William.

In a few years after his father's death, William moved on to the farm, and continued to reside there till his death, in 1851. By his will, made in 1836, he devised to his son, Wil-

liam P. Drew, father of the present defendants, as follows:
" all my homestead farm in said Dover, being the same farm
whereon I now live, and the same that was devised to me
by my honored father," &c. By the same will he gave cer-
tain pecuniary legacies to his other children, of whom the
petitioner was one, and all the rest of his personal property
to his said son, William P.

The above devise of real estate to William P., if it in-
cluded this tract, conveyed all the real estate of the testator
in Dover; but he left real estate in other towns, of which
no disposition was made in his will. William Pickering
Drew, the son, died in the lifetime of his father, leaving the
minor children named in the petition, his heirs at law.

The petitioner claims title in this tract on the ground that
the above devise in the will of his father, William Drew, to
his brother, William P., does not embrace this tract, and
therefore it remains undevised, and descends to his children,
including the petitioner. The petitionees, children of Wil-
liam P., claim to hold the whole of it under the above de-
vise to their father.

On the trial it appeared that, at the time of the convey-
ance of this tract by Elijah Drew to Austin, it was covered
chiefly with growing wood, and connected with wood land
and cleared land on the remaining portion of the farm; that
no bounds or monuments were set up or established then, or
at any time afterwards; and that the tract was not then, or
ever after, separated or distinguished from the surrounding
land by any fences or other marks of division. It was near
to a corner of the farm, but its lines nowhere extended to
the lines of the farm, but on two sides there was a narrow
strip between the lines of the farm and the lines of this
tract, of a few rods only in breadth. The tract was chiefly
wood, but one corner extended into the cultivated fields, and
included a small part of the orchard. There was evidence
tending to show that Austin, in his lifetime, cut some wood

on the tract, but no evidence showing any other occupation of it by him.

From the evidence, it appeared that William Drew, after the death of his father, Elijah, occupied the whole original farm, composed of this tract, bought by him of Austin, and of the remainder of the original farm, devised to him by his father, together, without any separation or distinction between them; that during his occupation of the same, he cleared up a portion of this tract, and that portion at the time of the making of his will, and ever after till his death, formed a part of a field on the farm; and that the whole farm was so occupied by him at the time of making his will, and continued to be, and was so occupied by those under him at the time of his death.

The court ruled that the devise included all the land which constituted the homestead farm of the testator, and therefore of this tract, which, at the time of making his will, and also at the death of the testator, formed a part of that farm. And thereupon it was agreed that if the said ruling should be sustained by the superior court, judgment should be rendered for the petitioner; otherwise a new trial should be granted.

*Christie & Kingman*, for the defendants.

The tract claimed by the plaintiff is entirely surrounded by the rest of the farm owned by the testator, lying mainly in the woods, but extending into the orchard and field. It was never in any way separated from the farm, either by fence, spotted trees, or monuments; and can only be found by following the description in the deed of 1765. The whole farm was used and occupied by the father of William Drew, as his homestead, during his very long life, except that Austin occasionally cut some firewood on the part claimed by the petitioner; and after the death of his father, in 1811, William Drew went into possession of the farm, under his father's will, and used and occupied it as his

homestead until 1851.  To be sure, he bought back, in 1802, the tract his father had sold to Austin in 1765; but he made no separate use of it; and it never having been severed from the farm, he always treated it and spoke of it all together as his father's farm.

Can it be seriously contended, therefore, that when Wm. Drew made his will, in 1836, giving to the oldest of his two sons, who was a farmer, (the other being a mechanic,) " all my homestead farm, situate in said Dover, being the same whereon I now live, and the same that was devised to me by my honored father," that he intended to reserve from the farm a square tract like this claimed by the petitioner, and die intestate as to this piece ?  The facts seem rather to carry an irresistible inference that such could not have been his intention.  The tract claimed would virtually carry with it the narrow strips on two sides of it, where it comes near the side lines of the farm, because those long narrow strips could not be profitably fenced by themselves. Did the testator intend to compel his son to abandon those portions of his farm, also, which are without question embraced in the devise ?

This view of the case proceeds entirely upon the probable intention of the testator, as gathered from the facts presented in the reported case.  But the rule of construction, as established by a host of cases, when applied to the language used in the devise, is conclusive of that point.

The word " all," is held to be a potential and controlling expression, not to be modified or narrowed by a subsequent doubtful or mistaken description.  *Radford* v. *Southern,* 1 M. & S. 299; *Lodge* v. *Lee,* 6 Cra. 237; *Willard* v. *Morton,* 4 Greenl. 14.

So the words " the farm whereon I now live," have been held so positive and certain a description as to control a subsequent description, limiting the premises to a part of the farm. *Jackson* v. *Barringer,* 15 Johns. 471.  " Where the land is once clearly ascertained by the description, the addi-

tion of a mistaken circumstance will not affect the grant."
*Drinkwater* v. *Sawyer,* 7 Greenl. 366.

All the above cases, and many others, are commented on
and approved, in *Woodman* v. *Lane,* 7 N. H. Rep. 241,
where it is said, " if the description be sufficient to ascertain
the estate intended to be conveyed, although the estate will
not agree to some of the particulars in the description, yet
it shall pass ;" and the following cases are cited as sustain-
ing the doctrine.    *Worthington* v. *Hylyer,* 4 Mass. Rep. 196;
*Jackson* v. *Clark,* 7 Johns. 217 ; *Bozoun's Case,* 4 Co. 34;
*Paul* v. *Paul,* 2 Bur. 1093 ; *Cutter* v. *Tufts,* 3 Pick. 278 ;
*Swyft* v. *Eyers,* Cro. Cha. 546 ; Moore, 45.


*Wm. H. Bartlett,* with whom was *A. Freeman,* for the pe-
titioner.

A general description may be limited.    2 Greenl. Cruise,
Tit. 32, ch. 21, § 62; 3 Ib. T. 38, ch. 10, § 90.    The words
" homestead farm," are general description.    They have no
legal signification, and may be defined by testator.    *Wood-
man* v. *Lane,* 7 N. H. Rep. 245 ; *Barnard* v. *Martin,* 5 N.
H. Rep. 536 ; *Allen* v. *Allen,* 2 Shep. 387.

The word *all* does not extend the meaning.    It merely
means all the homestead, as defined by him.    *Hubbard* v.
*Hubbard,* 15 Ad. & E., N. S. 227 ; *Myers* v. *Myers,* 2 Mc.
Cord, Ch. 264, cit. 3 Greenl. Cru. Tit. 38, ch. 10, § 69, note.
Nor can the words " where I now live," enlarge the mean-
ing.    They are hardly more definite.

It appears that the testator intended to die intestate as to
part of his property.

The description being general and uncertain, must be
controlled by the precise and definite words that follow,
which must be taken to be restrictive, especially as they
form part of the same sentence.    2 Greenl. Cruise, Tit. 32,
ch. 21, § 61; 3 Ib. Tit. 38, ch. 10, § 97 ; *Connelly* v. *Vernon,*
5 East, 81 ; *Parkin* v. *Parkin,* 5 Taun. 321.

Here, there is land satisfying the whole description, and

no repugnancy in the parts of the description. It must be all applied. *Ryall* v. *Bell*, 8 D. & E. 579; *Hubbard* v. *Hubbard*, 15 A. & E., N. S. 244; *Wilson* v. *Mount*, 3 Ves. 193; *Clough* v. *Bowman*, 15 N. H. Rep. 513; 1 Jarm. Wills, 720 and 721.

The language of the will ·being clear, the situation and condition of the property can have no effect. 1 Jarm. 349, note; 1 Greenl. Ev. §§ 287 and 289.

BELL, J. In construing a description of property granted or devised in a deed or will, the facts of the case are to be first ascertained, that the instrument may be interpreted with reference to the facts, which were before the grantor or devisor; because his intention and meaning may thus be most readily and satisfactorily ascertained. *Webster* v. *Atkinson*, 4 N. H. Rep. 23; *Webb* v: *Stone*, 4 Foster's Rep. 286; *Wooster* v. *Butler*, 13 Conn. 309.

It is sometimes said the instrument is to be viewed in the light of the surrounding circumstances.

The whole language of the deed is to be considered together, and effect is to be given, if it may be, to every part of it. *Webster* v. *Atkinson*, 4 N. H. Rep. 26; *Child* v. *Ficket*, 4 Greenl. 473; Shep. T. 87; *Clough* v. *Bowman*, 15 N. H. Rep. 504.

It is well said by *Phelps*, J., in 10 Vt. Rep. 178, "it is a well settled rule, that the whole instrument must be taken together. Each clause is to be regarded as qualified by others having reference to the same subject, and the intent is to be gathered from the whole. If, then, by any rational construction, the several parts can be made to harmonize, and to consist with the obvious general intent of the maker, there can be no good reason for rejecting any part, or denying to it its legitimate effect."

No word, or clause, or sentence, is to be rejected or overlooked, if a reasonable and consistent construction can be given to them. *Jackson* v. *Moore*, 6 Cow. 706; *Hibbard* v.

*Hurlbut,* 10 Vt. Rep. 173; *Herrick* v. *Hopkins,* 10 Shep. 217; *Doddington's Case,* 2 Co. 32; *Dowties' Case,* 3 Co. 9; Bac. Ab. Grant H.; 2 Rolls. Ab. 50; 3 Com. Dig. Fait. E. 4; 2 Mod. 3.

In former times something has been made to depend upon the order of sentences, or the part of the instrument where qualifying or restrictive words were found; but the general rule is now settled, that their natural effect and weight is to be given to every part of the language used, in whatever part of the instrument it is found.

Every description of property necessarily consists of parts, some of which may be necessary and essential to the description, while others may be circumstances of an additional and cumulative character, which might have been omitted, and no doubt could be entertained as to the property designed to be conveyed.

In many cases various circumstances of the description may be so combined that several complete descriptions of the property could be made out from them, sufficient to identify the property, omitting the others entirely, so that many particulars may be indifferently regarded, as cumulative.

Thus, if a man should convey a certain tract of land, situate in M., in the county of H., containing — acres, being lot No. —, in the — range in said M., bounded, beginning at a white oak tree marked, thence east by land of Y. 100 rods to a stake and stones, (and going round the lot by course, distance and abutters,) conveyed to me by A. B. by his deed, dated ———, recorded ———, (to which reference is made for further particulars,) and now occupied by me, as my homestead farm.

From a description composed of so many particulars, supposing them all correct, several brief descriptions may be formed, either of which would be a complete description of the property; as, for example:

*Lot No. —, in the — range in M.*

*My homestead farm now occupied by me in M.*

*A certain lot of land in* ———, *bounded, &c.*—*describing it by course and distance, or describing it by the abutters.*

*A certain lot of land in M., conveyed to me by A. B. by his deed. &c.*

The other parts of the description may, in either of these cases, be regarded as additional or cumulative to the description selected.

The number of terms used may be so reduced, that if either of those used is omitted, or if any one is incorrectly written or mistaken, the residue ceases to describe any particular property. The instrument then necessarily becomes void for uncertainty.

As if a deed conveyed land by the No. of the lot and range, and it proves there is no lot, or no range of that number. As the deed describes nothing, nothing passes. *Doddington's Case,* 2 Co. 33.

Where the description consists of several parts, it may prove, upon comparing the description with the land itself, that some of the particulars are incorrect, mistaken or false. In such case the law is well settled, that if it can be ascertained from such parts of the description as are found correct, what was intended to be conveyed, the instrument will be effectual, the property will pass, and the incorrect parts of the description will be merely rejected and disregarded. The authorities to this point alone are very numerous and uniform. Among them may be cited, *Blague* v. *Gould,* Cro. Car. 447, 473; Dyer, 376; *Chanton &c.* v. *Eyers,* W. Jones, 435; Cro. Car. 546; Dyer, 50; *Robinson* v. *Burton,* 2 Rolls. Ab. 52; *Wollison* v. *Bambridge,* Ib; Co. Litt. 4; 2 Rolls. Ab. 52 and 64; *Wrotesby* v. *Adams,* Plowd. 191; Dyer, 292, pl. 72; *Rumbold* v. *Rumbold,* 3 Ves. Jr. 65; *Wilkinson* v. *Malin,* 2 Tyr. 544; *S. C.,* 2 C. & J. 636; *Lame* v. *Reaston,* 5 Taunt. 207; *S. C.,* 1 Marsh, 25; *Mosley* v. *Massey,* 8 East, 149; *Doe* v. *Nickless,* 4 Jur. 660; *Hastead* v. *Searle,* 1 Ld. R. 728; *Day* v. *Trigg,* 1 P. Wms. 286; *Bozoun's Case,* 4 Co. 34; Bac. Tracts, 102; 4 Cru. Dig.

286 ; Shep. T. 247 ; 1 Jarm. Wills, 712, &c.; *Batt* v. *Burnett*, 11 Mass. Rep. 163 ; *Smith* v. *Strong*, 14 Pick. 128 ; *Wing* v. *Burgess*, 1 Shep. 111 ; *Vose* v. *Bradley*, 14 Shep. 156 ; *Abbott* v. *Pike*, 3 Red. 203 ; *Hill* v. *Foster*, 7 Vt. Rep. 100 ; *Vose* v. *Handy*, 2 Greenl. 322 ; *King* v. *Little*, 1 Cush. 436 ; *Bosworth* v. *Sturtevant*, 2 Cush. 392 ; *Jackson* v. *Moore*, 6 Cow. 706 ; *Lush* v. *Durse*, 4 Wend. 313 ; *Wendell* v. *People*, 8 Wend. 133 ; *Mason* v. *White*, 11 Barb. 173 ; *Lyman* v. *Loomis*, 5 N. H. Rep. 408 ; *White* v. *Gay*, 9 N. H. Rep. 126.

In other cases, the different parts of the description may be inconsistent with each other, so that both cannot be true, though either might be. In such case, either one or the other of the inconsistent terms must be rejected, and the rule established by the law is, that the more certain description shall govern, and the less certain be rejected; that part of the description which best corresponds with the general intention of the conveyance will be retained, and what is inconsistent rejected; as, for example, bounds and monuments upon the ground are preferred to courses and distances. See numerous cases collected in 1 U. S. Dig. 473, Title Boundaries; 4 U. S. Dig. 346, same Title.

In some cases, a part of the description is not wholly untrue or inconsistent with other parts, but is so partially. In such case, it is rejected so far as it is incorrect. But in a large class of cases, the description, which is true only of a part of the property described in other clauses of the description, may operate to qualify the other terms, and to limit them to such parts of the property to which such qualification applies ; as, for example, a man grants all his lands in D., which he had of the gift of J. S., then nothing passes but what he had of the gift of J. S. 2 Ed IV. 27 ; 2 Bro. Ab. 21, b, Grant 92. And the general rule is, that to give effect to every part of the conveyance such clauses shall be deemed qualifying and restrictive, and shall take effect by

limiting and restricting the conveyance to what those clauses may properly apply.

The cases where the additional description is untrue in part, and yet is retained and regarded as restricting or qualifying the other parts of the description, because it is not inconsistent or repugnant to them, are quite numerous.

The following are cited.

Dyer 27.   Devise of all his lands in the town of A. and in the hamlet of B.   The devisor had lands in the hamlets of A. and B. in that town.   Held nothing in the hamlet of A. passed.

*Agnell's Case*, 4 Co. 50.

A rent charge was granted out of C. Grange, late in the tenure of R., now in the tenure of B.   It appeared that part of C. Grange was not in the tenure of B.   Held this part was not charged.

*Hall* v. *Combes*, Cro. El. 368.

King Henry VIII had two mills under one house, and granted all the mills, lands, &c., in Wells and its suburbs. It was found that one of the mills was in Wells, the other was not.   Held only the mill in Wells passed.

*Clay* v. *Barnaby*, 2 Rolls Ab. 51.

Grant of "all lands and tenements in D. and S., now in the tenure of J. S. and others, which my father purchased of J. D. and others.   Held, lands which the father had by descent, did not pass.

*Wordon* v. *Osborne*, Cro. El. 674.

Devise of " all my land in Cokefield, called Haye's land." Hayesland extended into Cokefield and Cranfield.   Held only lands in Cokefield and Cranfield passed.

*S. C. & P. Tuttenham* v. *Roberts*, Cro. Jac. 22.

*Wilson* v. *Mount*, 3 Ves. 191.

Devise of all my freehold and copyhold lands, the copy-

hold part whereof I have surrendered to the use of my will. Some were surrendered, others not. Held the latter did not pass.

*S. P. Gascoigne* v. *Barker*, 3 Atk. 9.

*Doe* v. *Bell*, 8 D. & E. 579.

Devise of all my copyhold estates, situate in A., and which I became entitled to on the decease of my father. Devisor had copyholds in A., to which he became entitled on the decease of his father and others, before his death. Held the latter not pass.

*Roe* v. *Vernon*, 5 East 51.

Devise of "all the lands and tenements in the manor of W., which he held by copy of court roll, of the yearly value, &c., *and compounded for.* Held only the lands compounded for passed. The words are general, " *all lands,*" &c.

*Doe* v. *Greathead*, 8 East. 100.

Devise reciting " that testator had conveyed his manor of H., in the county of D., and his lands in H. aforesaid, which manor and other hereditaments he lately purchased of A., in trust," devised the said manor in H. aforesaid, and other hereditaments in H. aforesaid, and all other lands in and near U., or elsewhere in the county of D. The court held the devise confined to the county of D. and to lands purchased of A., though testator had other lands *near U.*, but in another county.

*Doe* v. *Parkin*, 5 Taunt. 321 ; 1 Marsh. 61.

Devise of " all my messuages in T., and now in my own occupation." Devisor had two messuages in T., but occupied only one. Held that alone passed.

*Doe* v. *Bower*, 3 B. & Ad. 453.

Devise of all my messuages, situate *in or near a street called S.*, in Sheffield, purchased of N.'s trustees. Devisor had six messuages in Sheffield, purchased of N.'s trustees,

by one deed; four about twenty yards from S., and two about four hundred yards from it, in G. street. Held the latter did not pass.

*Bodenham* v. *Pritchard*, 2 D. & R. 508; 1 B. & C. 350.

Devise of "all my mansion called D., with the lands thereunto belonging *as* now enjoyed by me." Devisor had purchased other lands, which he occupied with those belonging to D. Held these passed.

*Pullin* v. *Pullin*, 10 Moor 464; 3 Bing. 47.

Devise reciting that he was seized of divers lands in J., all of which were subject to a mortgage thereof to R., gave all his said lands, &c. He had twenty-one acres in J., not included in the mortgage. Held the latter did not pass.

*Doe* v. *Lyford*, 4 M. & S. 550.

Devise of "lands at W., in the parish of C., which I purchased of S., does not carry lands not at W., though purchased of S., and in the parish of C.

*Jackson* v. *Sill*, 11 Johns. 201.

Devise of the farm which I now occupy does not pass another farm, leased to a tenant.

S. P., *Jackson* v. *Mayer*, 13 Johns. 531.

*Allen* v. *Richards*, 5 Pick. 512.

Devise of " the whole of the farm where I now live," will not pass land at a distance, unless clearly used as part of the farm.

*Brown* v. *Saltonstall*, 3 Met. 423.

Devise of " my house in S., now occupied by me," will not pass other houses in S., occupied by tenants.

*Barnard* v. *Martin*, 5 N. H. Rep. 536.

Deed of my homestead farm in B., that I now live on, it being the same land conveyed to me by C. B., by deed of

1816.  The land in controversy was not conveyed by that deed, though adjacent to and occupied with the farm, and conveyed by C. B., by a deed of 1818.  The court held it not to be included.  They say " we are not at liberty to say that the demanded premises are parcel of the homestead intended to be conveyed, when the grantor, by reference to the deed of 1816, had expressly declared what he understood his homestead farm to be.  The last clause in the description is restrictive.

*Woodman* v. *Lane,* 7 N. H. Rep. 241.

Deed of " my homestead in S., and is the same land conveyed to me (by certain deeds named and referred to,) and the same is my homestead farm."  The land in controversy was not conveyed by either of those deeds, but was owned by the grantor, adjoined the other tracts, and had for fifteen years been occupied with them as grantor's homestead farm. It was held, after a labored examination, that this land did not pass.

See *Clough* v. *Bowman,* 15 N. H. Rep. 504.

But to this general rule there are certain well settled exceptions.  When the property intended to be conveyed is described in such distinct and explicit terms that it cannot, without inconsistency, admit of the qualification resulting from the partial description, and that partial description seems, upon its face, rather designed as an additional description of the same property than as intended for a qualification, there such mistaken description will be rejected for its inconsistency with other parts of the description.  The earliest cases in which this rejection is found are those where a particular property is given by its name; there it is held that the certainty of the property being apparent, any further erroneous description will not affect the conveyance. Lord *Bacon* says, (Tracts. 102, 4 Cru. Dig. 286,) " *Veritas nominis tollit errorem demonstrationis.*"

2 Ed. IV. 27; 2 Bro. Ab. 21, b, Grant 92, before cited, is a very early case of this kind.

" A man grants all his land in D., which he had of the gift and feoffment of J. S., then nothing shall pass but what he had of the gift of J. S. But if he grant all his land in D., *called N.*, which was of J. S., then his land, called N., shall pass, though it never belonged to J. S., by reason of the specific name, (called N.,) otherwise of general words, as in the first case."

*Chamberlain* v. *Turner*, Cro. Car. 129.

Devise of the house or tenement wherein W. N. dwelleth, called the White Swan, in O., W. N., at the time of making the will, occupied the alley and three upper rooms. Others occupied the rest of the house and the appurtenances. Held the whole passed. *Hyde*, C. J., doubted, but *Jones*, *Whitlock* and *Croke* held the house passed. They held the devise of the house, called the W. S., did necessarily import the whole house, and could not be confined to the three rooms. If the house had not been described by name, it might not have been intended beyond the three rooms.

*Radford* v. *Southern*, 1 M. & S. 299.

Devise of all that my farm, called Trogues farm, in D., now in the occupation of A. C. Part of Trogues farm was not in the occupation of A. C. It was held the whole passed. Lord *Ellenborough:* " As to the argument that the words of the devise are satisfied by applying them to the farm in C.'s possession, it may be answered that if these closes were parcel of Trogues farm, the word " all," in the devise, would not be satisfied without including them. The testator was mistaken as to the person in whose occupation the two closes were, but the devise is sufficiently comprehensive. It is clear he meant to pass all which was called Trogue's farm."

*Down* v. *Down*, 7 Taunt. 343.

Devise of " a farm, called Coltswood farm, now on lease
to M. F." It appeared that a close, called William Spring,
was excepted in the lease to M. F., of Coltswood farm, but
it was held that it passed. The exception proved it part of
the farm. The name required the whole farm, and the
mention of the lease to M. F. was rejected. so far as it was
untrue.

*Doe* v. *Jersey*, 1 B. & A. 550.

A. devised " all that her B. F. estate," adding, after de-
scribing another estate, " which, as well as my B. F. estate,
is in the county of G." Part of the B. F. estate was in the
county of B. It was held that all the B. F. estate passed.

*Ela* v. *Card*, 2 N. H. Rep. 175,

Was the case of a deed of " the whole of lot No. 14, in
O., containing five hundred acres, and which lot is the orig-
inal right of T. W." The original right of T. W. was to
four hundred acres only, in lot No. 14. It was held that
the additional clause did not restrict the deed to the four
hundred acres.

*Lodge's Lessee* v. *Lee*, 6 Cra. 237.

Grant of " all that tract or upper island called Eden,
in P. G., beginning, &c., &c., (describing it by courses and
distances which excluded a part of it.) Held the whole
island passed. " An island has natural boundaries more
certain than course and distance. The intention is mani-
fest to convey the whole island."

*Lincoln* v. *Wilder*, 16 Shep. 169.

Deed of a lot in D., bounded by lot No. 53., A. G.'s lot,
and partly *by the shore of* Dennis river, said premises being
*lot No.* 52, on the plan of D., made by J." By the plan,
the lot No. 52 was bounded by the river. Held the prem-

ises being certainly described as No. 52, according to the plan, the words "by the shore" must be rejected.

But the principle is by no means confined to the cases where the property conveyed or devised is described by name, though that might be inferred from some of the earlier cases.

But it extends equally to every case where the property is described clearly and distinctly, and the further particulars of description are untrue in their application to part of the property, so that they might ordinarily operate to restrict or qualify the other description, but are inconsistent with it.

*Stukely* v. *Butler*, Hob. 169, (*S. C.* 2 Ro. 50, Moor 880,) contains a very full discussion upon the effect of erroneous descriptions. It was a bargain and sale of all woods, underwoods, &c. growing, &c. upon his whole manor of C., viz: in all his coppice called B., his wood called P., and two other woods named. The first question was if the viz. limited the general grant of all the wood in the manor to the groves enumerated under the viz., or the general clause being certain and express, should make void the viz., and *Hobart*, C. J. says, "I grant that a viz. may work a restriction where the former words were not express and special, but so indifferent as they may receive such a restriction without injury, though those former words, by construction of law, would have had a larger sense, if the viz. had not been."

*Harrington* v. *Pole*, Dyer 77, b.
Lease of all lands, &c., belonging to the late Monastery of ——, to wit: such and such closes, naming them, and it was held that the grantee should have any other lands belonging to the monastery.

*Goodtitle* v. *Paul*, 2 Burr. 1089.
Dr. Paul devised to his wife "my farm at Bovington, in

the tenure of J. S." Testator purchased this land, subject to the lease to J. S., which excepted " all wood, wood-ground, hedgerows, timber and trees whatsoever." It appeared there were hedgerow trees, chalk dell trees, and six acres of wood. It was contended that " in the tenure of J. S." excluded this excepted timber; but it was held that those woods were intended as an additional description, and not as a restriction, and the wife took the whole.

*Doe* v. *Gallaway*, 5 B. & Ad. 43.
Under a lease of all that part of the park called B., in the county of O., and now in the occupation of S., lying within certain specified abuttals, with all houses, &c. belonging thereto, and which are now in the occupation of S. It was held that a house, on a part which is within the abuttals, will pass, though not in the occupation of S.

*Doe* v. *Cranstoun*, 7 M. & W. 41 ; 4 Jur. 683.
Devise of " freehold lands in W. B. and M.," described as " derived from his father's ancestors." It appeared the lands in B. and M. were derived from the father's ancestors, but they were leasehold. They were held to pass by the devise.

*Hill* v. *St. John*, 3 Bro. P. C. 375 ; Cowp. 94; 2 W. B. 390 ; Lofft, 1, 13, 349.
Devise of all the messuages, &c., and advowsons in the county of H., for the purchase of which I have contracted. Testator had two advowsons, one contracted for, the other actually conveyed to him. Held both passed, as otherwise all my advowsons do not pass. Perhaps the principle was not well applied in this case.  ·

*Marshall* v. *Hopkins*, 15 East 309.
Devise of all his messuages, with all lands, &c., situate in B., now in the occupation of T. W., except F. meadow. The messuage and two acres were in the occupation of T. W., the rest, seventeen acres, including F. meadow, was in

---

---

the occupation of other tenants. Held the description " in the occupation of T. W." was inconsistent, and was, there-fore, rejected.

*Trapp's Case*, 3 Leon. 235, (14 Vin. A. 83.)

A demised to C. fifteen houses in B., in the occupation of fifteen tenants. A. enfeoffed D. of all those fifteen houses in B., demised to C., in the occupation of, &c., omitting the name of one of the tenants. Held all the messuages pass.

*Swift* v. *Ayers*, 2 Rolls A. 52.

Grant of all the tythes pertaining to a rectory, all which were lately in the occupation of M. Peytoc. It did not appear that M. P. had possession of any of the tythes pertaining to the rectory. Held the words " all which," &c., were words of suggestion and not of restriction, and all the tythes pass. And so it was held by the whole court, that if it had been found that M. Peytoc had the occupation of any particular tythes, but not of all, yet all had passed.

*Streett* v. *Finck*, 2 S. & S. 229.

Devise of " all my copyhold messuages, lands, &c. what-soever and wheresoever, and which I have surrendered to the use of my will." It was held that the lands all passed, those unsurrendered and those surrendered alike.

*Oxenforth* v. *Cawkwell*, 2 S. & S. 558.

Devise of " all my freehold and copyhold messuages, the copyhold parts thereof being duly surrendered," passes those not surrendered as well as those surrendered.

*Goodright* v. *Pears*, 11 East 58.

A. surrendered a copyhold cottage, with a croft adjoining, all which were then in his own possession, and devised the same day " a cottage and premises, then in his own posses-sion." The croft was then in possession of a tenant. The court, construing the surrender and will as parts of the same

transaction, held *then in his possession* merely an error of description, and the croft passed.

*Tenny* v. *Beard*, 5 N. H. Rep. 58.

Deed of lot No. 10, bounded by lands of the adjoining owners, which bounds exclude part of No. 10, on one side, and include part of No. 9 on the other. Held the abuttals are more certain, and " *lot No.* 10," though true in part, is inconsistent with them, and must be rejected.

*Clough* v. *Bowman*, 15 N. H. Rep. 504.

Deed of all that part of the right of land in Lyman, No. 34, that is south of the log fence down south of Z. Clough's barn, being the same land that B. Clough deeded to us, November 9, 1835. The log fence, at the time of this deed, was a new and temporary fence, erected in a different place from one referred to in the earlier conveyances, which had been burned. The court held that it was clear, by the deed, that the land designed to be conveyed was that described in the former conveyances ; if, then, the description *by the log fence*, &c., by referring to the temporary log fence, was inconsistent, it might be rejected. The same result was also arrived at on other grounds. See *White* v. *Gay*, 9 N. H. Rep. 126; *Webb* v. *Stone*, 4 Foster's Rep. 282.

*Worthington* v. *Hylyer*, 4 Mass. Rep. 196.

Grant of " all that my farm of land in W., on which I now dwell, being lot No. 17, containing one hundred acres, with my dwelling-house and barn thereon standing, bounded by (adjoining lots and a pond,) having a highway through it." Lot No. 17 was bounded as described, contained one hundred acres, and was part of the farm on which the grantor dwelt, but it was not *all* the farm, it had no house or barn, the grantor did not dwell on it, and it had no highway through it. Held the farm intended was sufficiently ascertained, and the " lot No. 17, &c.," being inconsistent, were rejected, and the whole farm passed.

*Tufts* v. *Cutler*, 3 Pick. 272.

Grant of one " moiety of certain land, situated, &c., the same being part of the real estate of, &c., and set off as dower to the widow," then follows " meaning to convey to J. C. the same premises that J. C. conveyed to me in 1811." J. C. had conveyed to the grantor, in 1799, one half of this dower, but in 1811 he conveyed only a quarter of it. Held, the land granted being sufficiently ascertained, the explanatory clause being inconsistent, must be rejected.

*Thatcher* v. *Howland*, 2 Met. 41, and *Elliot* v. *Thatcher*, 2 Met. 44.

Deed of " all my real property or homestead, so called, in D., consisting of a dwelling-house and outbuildings, and about thirty acres of land ; for more particular boundaries reference may be made to a deed," described. That deed conveyed only about half the property. Held, the description being clear, would not be narrowed by this reference.

*Keith* v. *Reynolds*, 3 Greenl. 393.

Land, described as " a farm," " granted to A. Pattee," " bounded as followeth," and describing courses and distances which include only part of the Pattee farm. Held the inconsistent courses are to be rejected, and the whole farm passes.

*Willard* v. *Moulton*, 4 Greenl. 14.

A deed conveyed certain parcels of land, also another parcel, particularly described and mentioned in a deed referred to, adding " said parcels being all the farm on which I live." The deed referred to conveyed one undivided third part of the land described. Held the whole passed.

*Child* v. *Pickett*, 4 Greenl. 471.

Deed of " three parcels or lots of land in P., bounded as follows : the first lot beginning," (and so describing that lot by its boundaries,) and then adding " being the same which

was conveyed to me by J. W., by deed, dated," &c. The deed referred to described all three of the parcels by their boundaries. It was held that the three lots passed, and the deed was not to be restricted to the lot described.

*Cate* v. *Thayer*, 3 Greenl. 71.

Dresden was bounded on one side, " thence on a north northeast course, to the north line, including *the whole* of G.'s farm." A north northeast course would not include *the whole* of G.'s farm." Held it was clear the whole of G.'s farm must be included,and, therefore, the course being inconsistent must yield, though true as to part of the distance.

*Drinkwater* v. *Sawyer*, 7 Greenl. 366.

Deed of a tract described by bounds, &c., and adds " including the land whereon the dwelling-house stands, which terminates at Cushing's point, with all the buildings thereon, and is the same premises which were conveyed to me by J. C., by deed, dated, &c. The deed referred to conveyed the first parcel described by bounds, but *not the land* on which the house stood, which was held under another conveyance. Held the land on which the house stood passed, and the reference to the deed of J. C., as to that, had no effect.

*Crosby* v. *Bradbury*, 2 App. 61.

Deed of " a saw mill site in L. Village, with the mill thereon standing, " meaning to convey all the premises which W. B. purchased of B. G., by deed, dated, &c., reference thereto being had." The deed referred to conveyed part of the land covered by the mill only. Held that *a mill site* is a definite description, and the land conveyed being ascertained by it, the reference is to be rejected.

*Field* v. *Huston*, 8 Shepl. 59.

Deed of " a tract or parcel of land in F., containing two hundred and thirty acres, more or less, being *all* the land I

own in said town. The butts and bounds may be found in the county records at P." · One parcel was held by possession only. Held the grant was not restricted by the reference, and that parcel passed.

*Moore* v. *Griffin*, 9 Shep. 350.

Deed of ·" part of the estate of H. M., which lies next to and adjoining H. river, *bounded round by the shore.* H. M.'s estate went to low water, on H. river. Held it was not restricted by the phrase *round by the shore,* but passed to low water.

*Hibbard* v. *Hurlbut*, 10 Vermont Rep. 173.

Lease of " all the tracts, pieces and parcels of land in G. and N., which were left to me by my late husband; and being the same land which I now live on and occupy." The parcel in question was not occupied by her. Held the general description was not restricted by the last clause. *Phelps*, J., remarks that the phrase " and being " evidently implies that, in the mind of the party, the import was the same as that of the preceding description.

*Benedict* v. *Gaylord*, 11 Conn. Rep. 332, (2 U. S. Dig. 45.)

Deed of land, described by known metes and bounds and corresponding courses and distances, adding a further description by bounding the land on the adjoining proprietors. The grantee claimed land included by the last, but not by the first description. Held the latter description was less certain, and as far as it was inconsistent with the former, was to be rejected.

*Jackson* v. *Barringer*, 15 Johns. 471.

Lease of " the farm on which J. D. lives, lying E. of J. M., W. of A. B., S. of T. B., *to contain* 80 *acres."* It contained 146 acres. Held *to contain* 80 *acres* was inconsistent with the more certain description, and the whole passed.

To decide the question raised in this case, we have merely to consider whether the clause which, it is contended, should be construed as restrictive and qualifying, is, first, so connected with the former description as to appear intended as an additional description of the same property; and second, if it is so inconsistent with and repugnant to the language of the principal description, that it cannot have the effect of a restriction or qualification without conflicting with its proper meaning.

As to the first, it seems to us there can be no doubt. The devise is of "all my homestead farm in Dover;" then it is added, "being the same farm on which I now live," which is but an additional and true description of the same farm; then comes the addition, "and the same that was devised to me by my honored father." This purports to be a further description of the same farm. It must be so understood by every one who reads the will, until he learns that a part of the farm was purchased by himself, and not devised to him.

Though it will be using this addition for a purpose apparently never intended by the testator, yet, by virtue of the general principle that every part of a will shall take effect, if it may without inconsistency, this clause is to be construed as qualifying and restrictive of the previous description, unless there is found to be some inconsistency or repugnancy in the two, so that the former description cannot admit of the qualification.

As to the second point, then, we think the case is one of such inconsistency. The devise is of "all my homestead farm in Dover," "being the farm on which I now live." This language cannot be satisfied with any thing less than the whole farm. Any qualification or restriction, which would reduce the devise to a part of the farm, is repugnant to this, and must be rejected.

If such a qualification had been so inserted, in the form of a restriction and as a part of one connected description, as if

it had been said " all my homestead farm, which was de-
vised to me by my father," it would limit the part of the
homestead to so much as was so devised, because, taking
the two parts of the description together, it was not " *all
my homestead*," but " all which was devised by my father,"
which was designed to be given. But here the first descrip-
tion, " all my homestead farm in Dover," is complete and
without any qualification. The idea is completely express-
ed, and the subsequent description " the same devised to
me by my father," is but a mistaken description of the same
property, which should be rejected so far only as it is un-
true.

A large number of the cases cited, where the additional
description is held not to operate as a restriction, turn upon
the force of the word " *all*." Such are the cases 2 Ed. IV.
27, " All his land in D., called N."; *Radford* v. *Southern*,
1 M. & S. 299, " all that my farm, called Trogue's farm;"
*Doe* v. *Jersey*, 1 B. & A. 550, " all that my B. F. estate;"
*Lodge's Lessee* v. *Lee*, 6 Cran. 237, " all that tract or up-
per island called Eden;" though in these cases the property
is also designated by name; *Stukely* v. *Butler*, Hob. 169,
" all woods, &c., growing upon the whole manor of C.;"
*Harrington* v. *Pole*, Dyer 77, b., " all lands belonging to the
late monastery of B.;" *Hill* v. *St. John*, 3 Bro. P. C. 375,
" all the messuages and advowsons," &c.; " *Marshall* v.
*Hopkins*, 15 East 309, " all my messuages with all my
lands," &c.; . *Swift* v. *Eyers*, 2 Rolls Ab. 52, " all the tythes
pertaining to —— rectory;" *Strutt* v. *Finch*, 2 S. & S. 229,
" all my copyhold messuages, lands, &c., whatsoever and
wheresoever;" *Oxenforth* v. *Cawkwell*, 2 S. & S. 558, " all
my copyhold messuages;" *Worthington* v. *Hylyer*, 4 Mass.
Rep. 196, " all that my farm of land in W. on which I
now dwell," &c.;" *Tufts* v. *Cutter*, 3 Pick. 272, one moiety
of certain lands," &c.; *Thatcher* v. *Howland*, 2 Met. 141,
" all my real property or homestead, so called in D.;" *Field*
v. *Huston*, 8 Shepl. 59, " all the land I own in said town;"

*Hibbard* v. *Hurlbut*, 10 Vermont Rep. 173, " all the tracts, &c., which were left me by my late husband ;" *Ela* v. *Card*, 2 N. H. Rep. 175, " the whole of lot No. 14," &c.

These cases seem to justify the general rule, that where the principal description purports to be of *all or the whole* of any property described, any additional description, apparently designed to apply to the same property, but which proves to be only partially true, will not be construed to restrict the grant to a portion of the property, but all will pass. It would be otherwise, where the additional expressions upon their face purport to be qualifications or limitations of a preceding general description.

Whatever doubts we might have entertained upon the authorities cited, as to the cases of *Barnard* v. *Martin* and *Woodman* v. *Lane*, if they were for the first time before us, it is not necessary to question those decisions, since our decision here rests on a ground not applicable to them.

*Judgment for the petitioners.*