### JEWELL *v.* WARNER.

The statute *de donis* was impliedly repealed by the statutes of 1789, and consequently estates tail no longer exist in New-Hampshire.

THIS is an action of formedon *in the descender.* The general issue, *ne dona pas*, pleaded, with nine brief statements of defence. The demandant moved that the brief statements be rejected as insufficient, and showing no answer to the demandant's claim.

It was agreed that September 18, 1783, Joseph Jewell died seized of the premises of which the demandant claims one undivided half, and which are part of lot number twenty-four in the first division of eighty acre lots in Warner. By his will, duly executed, proved and allowed, he made the following devise :

" 7thly. I give and bequeath unto my great-grandsons, Jonathan Jewell and Jacob Jewell, the sixty acre and eighty acre lots of land in the first division of sixty and eighty acre lots in the township of New-Almesbury, or Warner, to be theirs, and the heirs of their body and their heirs' assigns."

Jacob Jewell died in 1825, and Jonathan Jewell May 4, 1852, leaving the demandant, his eldest son, who now claims the demanded premises in this action ; the tenant being in possession of the same, claiming a fee therein.

*W. H. Bartlett*, for the demandant.

I. The devise is of an estate tail in terms, and this is not

altered by the addition of the words, "their heirs' assigns." Greenl. Cruise, title 38, chap. 12 ; 2 Jarm. Wills 232 ; *Riggs* v. *Sally*, 3 Shep. 408 ; *Wright* v. *Thayer*, 1 Gray 286 ; *Buxton* v. *Uxbridge*, 10 Met. 87 ; *Brown* v. *Lyon*, 2 Seld. 419.

II. An estate tail descends to the eldest son. *Corbin* v. *Healy*, 20 Pick. 516 ; *Wright* v. *Thayer*, 1 Gray 286 ; *Riggs* v. *Sally*, 3 Shep. 408 ; 1 Story Const. 60, 68.

Our provincial statute of distributions, like the Massachusetts act, from which it was probably copied, provided for the descent of lands in *fee simple* only ; Prov. Laws 104 ; and its subsequent modifications were like those of the Massachusetts statute, which are held to be a mere revision, and not an alteration of the early law. Act 1789, N. H. Laws, Ed. 1805, p. 170. The reasoning of the Massachusetts cases then applies, and shows that here an estate tail descends as at common law. *Atherton's Address*, 3 N. H. His. Soc. Coll. 163–4.

This would seem to have been the doctrine of almost all the States except Connecticut, where the exception was probably due to the peculiarity of local law. And such seems to have been understood to be the law in *Frost* v. *Cloutman*, 7 N. H. 10, 13.

It has been said estates tail were never adopted in this State. They did exist here. Special acts were passed to dock entails, one of which was cited in *Bow* v. *Allenstown*, 34 N. H. 351.

Various common recoveries have been suffered of lands here. 1 Farmer's Belk. His. of N. H., 123, 164, 252, 297 ; 3 do., App. 365 ; see Life of Pepperell 346 ; 4 Kent 14 ; and estates tail were recognized by act of 1791. Laws 1815, p. 164, and of 1805 ; Laws 1830, p. 74. Formedons were limited by those statutes. Statute of 1837 ; Laws of 1837, p. 316 ; and Rev. Stat., 129, enable tenants in tail to convey by deed, and bar remainders, &c.

That the law relative to estates tail is in force here is implied in *Hall* v. *Chaffee*, 14 N. H. 215 ; *Downing* v. *Wherren*, 19 N. H. 284 ; *Bell* v. *Scammon*, 15 N. H. 381 ; *Ladd* v. *Harvey*,

Jewell *v.* Warner.

1 Foster 526 ; Griff. L. R. 42 ; Ang. Lim. 360 ; 4 Kent Com.
15 , n. b ; 1 Greenl. Cr. 56, note.

*H. A. Bellows,* for the tenants.

The statute *de donis* has not been adopted in this State. Its
policy has been strongly condemned in England, and by the best
jurists ; 4 Kent Com. 11–13 ; and common recoveries invented
to avoid it. Stearns R. A. 327–8. It is held to be repugnant to
the spirit of our laws. *Parker,* C. J., in *Hall* v. *Chaffee,* 14
N. H. 233, 239. They are essentially abolished here. 4 Kent
Com. 16, r. ; Bouv. Dict., Art., Tail.

Entails in Indiana and Louisiana never existed. They are
unknown in Illinois and Vermont. In Ohio, Virginia, Tennessee,
Kentucky and New-York, estates tail are converted into estates
in fee simple by statute. In Alabama, Missouri, Mississippi,
New-Jersey, Connecticut and North-Carolina, they have been
modified, and in Georgia they have been abolished without re-
servation. Griff. Reg., n. t. In *Wright* v. *Herren* it is said
that the statute *de donis* is not in force in South-Carolina. 5
Rich. Eq. 441. By the law of 4 Geo. I., N. H. Laws, Ed.
1815, p. 571, the rule of descent, giving to all the children equally
except to the eldest son, is very clearly intended to apply to all
estates undevised, both real and personal. The provision for the
administration, the discharge of the debts, and the apportionment
of the residue of the real and personal estate, show that the law
was not intended to apply to estates in fee simple only, but to all
the estates of the deceased. As to the construction of the term
*simple* in this statute, see 4 Kent. Com. 16, showing that it is
much broader than is claimed by plaintiff's counsel.

By the law of Feb. 3, 1789, N. H. Laws, Ed. 1805, p. 170, by
which the share of the eldest son was made equal to the rest, it
is made in terms to apply to all the estates of the deceased. And
so does the statute of 1822, Laws 1830, p. 207, and the Revised
Statutes, ch. 166, p. 331. The whole of our legislation shows
the purpose to be to provide for an equal distribution of all intes-
tate estates.

No decision is cited, and it is believed that none can be found, establishing the existence of estates tail in this State, or the operation of the statute *de donis.* In *Frost* v. *Cloutman,* 7 N. H. 9, no controversy was made, and the tenant's title was good in either case.

On the other hand, the whole spirit of our legislation on the subject of descents and distribution of estates, and conveyances by deed, as well as of our judicial decisions, is adverse to such an idea. Upon the principle laid down in *State* v. *Rollins,* 8 N. H. 550, the law on this subject ought not to have been adopted. Practically *we* know it has not been adopted. In *Hall* v. *Chaffee,* C. J. *Parker* speaks of such estates *as hardly known,* (p. 233,) and *as obsolete,* (p. 238.)

Such seems to be the opinion of Chancellor *Kent,* 4 Com. 16, n. Unless, then, the statute *de donis* has been clearly adopted by legislative enactment, by judicial decisions, or by general consent, we hold that it is not law in New-Hampshire, and all these things are wanting.

BELL, J. So far as we are aware this is the first case in which the question has been raised and contested, whether estates tail can exist here consistently with the statutes of the State.

It may be admitted that an impression has to some extent prevailed that such estates might and did exist here, and actions have been brought, and questions raised and discussed, in which that idea has been tacitly admitted ; and it has been laid down in books published elsewhere, and in one instance here, that the law of England relative to estates tail was in force here. 1 Cruise Dig. T. 2, ch. 2, note 20, 161 Am. Ed.; Griff. L. R. 42 ; Atherton's Address, &c., cited for the plaintiff.

We have found little to support it in the reported decisions. *Frost* v. *Cloutman,* 7 N. H. 9, was a formedon *in remainder,* and the question was if the remainder had been barred by a common recovery, followed by an entry, where no writ of possession had been issued. There was no controversy as to the validity or the effect of the will under which the parties claimed,

or as to the law relative to estates tail. "It is not disputed," says *Richardson*, C. J., " that the demandant is entitled to judgment in this case, unless the defence upon which the tenants rely is a legal answer to the action." The court decided nothing as to the point before us, and there is no allusion to any previous decision of the courts here upon it.

*Hall* v. *Chaffee*, 14 N. H. 215, related to an executory devise and not to an estate tail. It is incidentally said by the court that estates tail, *though not abolished*, are not in accordance with the general spirit of our laws, and are hardly known among us; but there was no investigation or decision upon the point.

The cases of *Bell* v. *Scammon*, 15 N. H. 390, and *Downing* v. *Wherren*, 19 N. H. 9, and *Ladd* v. *Harvey*, 1 Foster 526, each contain allusions to estates tail, in discussing the law relating to executory devises, but there is nothing of weight upon the question before us.

An inference is attempted to be drawn from the statute of 1837, authorizing tenants in tail to convey by deed, and to bar their heirs and the remainder or reversion, that in the opinion of the legislature estates tail still existed here. It seems to us rather designed to obviate some doubt which might have arisen on the subject.

Believing then that no such action of the courts or of the legislature has taken place as to preclude an inquiry into this question, we propose to examine the statutes, and ascertain to what conclusion they lead. To present clearly our views on this matter it may be proper to look back to the state of the law anterior to the statute of Westminster the second, passed in 1285, (13 Ed. I.) called the statute *de donis*.

Conveyances made to a man and his heirs gave to the purchaser an estate in fee, and to an estate in fee certain incidents were held to belong, among which, and the most essential, was the absolute dominion, the power to dispose of it as he pleased. To limit this power and to secure the return of the property to the donor in case the purchaser should have or leave no descendants, it became usual to convey property to a man and the heirs

of his body.   But it became the settled construction of these conveyances that the purchaser took a fee subject to the condition that he had heirs of his body.   By the birth of such an heir, the estate of the purchaser became absolute, at least for three purposes.   1.   To enable him to alien the land, and thereby to bar not only his own issue, but the reversion of the donor.   2. To subject it to forfeiture for treason ; and 3, to empower him to charge the land with rents and incumbrances, so as to bind his issue.   2 Bla. Com. 111 ; 4 Kent Com. 11.

To defeat this construction, and to limit the power of the purchaser to divert the property from his heirs, and to divest the title of his grantor on failure of issue, the statute *de donis* was passed.   It provided, " quod voluntas donatoris, secundum formam in chartam doni sui, manifeste expressam, de caetero observetur, ita quod non habiant illi, quibus tenementum sic fuit datum sub conditione, potestatem alienandi tenementum sic datum, quo minus ad exitum illorum, quibus tenementum sic fuerit datum, remaneat post eorum obitum, vel ad donatorem vel ad ejus heredem, si exitus deficiat, nerestatur:" 1 Sull., sec. 286 ; 1 Cruise Dig. 77.

Upon this statute is founded the whole system of the law relative to estates tail.   ‖Before the statute the donor had what was called a possibility of reverter ; a right to have the property if the condition failed, either by the failure or extinction of the prescribed heirs of the donor, but subject to be wholly defeated if the donee, after he had issue, or any of his heirs, should alienate the property.   After the statute this possibility was held to become a certain interest ; an estate in reversion.

Before the statute, no remainder could be limited after a fee simple conditional, because it was a settled maxim that no remainder could be limited after any fee simple, under the construction of the statute, as the estate given could not be defeated, and the right of the donor was secured, the donee took a limited interest less than a fee simple, called a fee-tail, and the reversion, after it became susceptible of conveyance, and consequently one or more remainders could be limited after the estate tail.

The limitation of the estate to descend to some or all of the

heirs of the body of the donee, and to revert to the donor or his heirs on failure of such heirs of the donee, and the prohibition to the donee and his heirs to alien the land, so that it should not so descend or revert, were the essential characters of an estate tail, which distinguished it from an estate in fee simple. They were all indispensable, and it would cease to be an estate tail at once when the cause of descent should be changed, or the reversion be cut off, or whenever the donee or his heirs should acquire the unlimited power of alienation.

By the decisions of the courts, common recoveries and fines with proclamations, were established as the common assurances of a tenant in tail, and the liability to be defeated by these modes of alienation became an inseparable quality of an estate tail; but though they modified the effect of the statute in a very essential manner, they could effect no repeal of it, even by implication, and the statutes which subjected estates to forfeiture for treason, and made certain leases of the tenants in tail binding on the issue, were too limited in their effect to do more than slightly modify the statute.

It is clear that later statutes repeal, by implication and without express words, such earlier statutes as are inconsistent with them. *Foster's Case,* 10 Co. 63; Brown's Max. 23. But such repeals are not favored. Only so much of the present law is repealed as is plainly repugnant to the new provisions, and both are to be construed so that they may stand together as far as may be. *Thornby* v. *Fleetwood,* 10 Mod. 118; *Bowen* v. *Lease,* 5 Hill 225; *Williams* v. *Potter,* 2 Barb. 320; *Snell* v. *Bridge,* 24 Pick. 297.

Still, though a statute is not repugnant in all its provisions to a prior one, yet if the latter statute was intended to prescribe the only rule that should govern the case provided for, it repeals the prior one. *Davis* v. *Fairbanks,* 3 Haw. U. S. 636; *Plank Road* v. *Allen,* 16 Barb. 18.

The statute *de donis,* as was said in *Hall* v. *Chaffee,* has never been directly repealed, nor estates tail directly abolished here. If the statute and the estates which grow out of it are not in

force here, it is not in consequence of any statute abolishing it in terms, or of any legislation directly tending to its repeal, but of statutes having other objects chiefly in view, but containing provisions inconsistent with it, and irreconcilable with the idea that it can remain in force here, and which, because of their inconsistency, must be held to have impliedly repealed it.

We regard it as clear, that if it shall be found that by our legislation the law of entails has been substantially abolished ; if principles subversive of that system have been established here, it is no duty of the courts to scrutinize closely to see whether some relic of a worthless system could not, by nice reasoning, be preserved. If our statutes have overturned the two great objects of the statute *de donis,* to secure to the eldest sons in succession of the grantee an inalienable interest in the property, and to the grantor and his heirs the reversion on failure of the heirs of the body of the grantee, we may regard the statute as repealed, and with it all the doctrines of the English law on the subject of estates tail.

In the year 1789 the statutes relating to devises and descents were revised and reënacted, and it is in them chiefly that we discover such great and radical changes of the law as we conceive to be inconsistent and irreconcilable with the statute *de donis,* and repugnant to the nature of estates tail.

By the statute entitled " An act ordering the descent of intestate estates," &c., passed February 3, 1789, Laws of 1789, p. 76 ; Laws of 1797, p. 242 ; Laws of 1815, p. 207 ; it is provided, " that when any person shall die seized of lands, tenements or hereditaments, within this State, not by him devised, the same shall descend in equal shares among his children, and such as legally represent such of them as may be dead. And where there are no children or child of the intestate, the inheritance shall descend equally to the next of kin, in equal degree, and to those who represent them." And by this statute it is further provided, that " the real estate shall stand chargeable with the debts of the deceased over and above what the personal estate shall be sufficient to pay."

By the statute of the same date, entitled "An act for the settling of testate estates," (Laws, Ed. 1789, p. 71 ; Laws, Ed. 1797, p. 233 ; Laws 1815, p. 198,) it is provided, "that every person, lawfully seized and possessed of any estate in lands, tenements or hereditaments, within this State, of the age of twenty-one years and upwards, and of sane mind, shall have power to give, devise and dispose of the same, as well by his last will and testament in writing, as by any other act duly executed, to and among his children or others, as he or she may think fit;" and it is further provided, "that all such estate, real and personal, that is not devised or bequeathed in the last will and testament of any person hereafter to be proved, shall be distributed in the same manner as if it were an intestate estate."

If these statutes apply to estates tail, it will not be questioned that the first entirely defeats the two great objects of the statute *de donis* and of the law of entails, to secure the descent of the estate to the heir *per formam doni,* and to the donor and his heirs the reversion. All distinction is destroyed between estates tail male, and estates tail female, and estates tail general, because the statute declares in effect that the estate shall descend neither to the heir male nor to the heir female, nor yet to the heir general, but to the children of the deceased, who may none of them be capable of inheriting by force of the entail ; and in case there are no children, then to the next of kin, who may be but remote collaterals. That cannot be an entailed estate which must descend in equal shares to the children of the owner and those who represent them, and which must be distributed, in default of children and their descendants, to the next of kin in equal degree ; and which, therefore, can in no event revert to the donor or his heirs, or remain to those entitled *per formam doni* to the estate on failure of heirs of the body. Such an estate is a fee simple. It is to descend to all the statute heirs alike, without regard to the claims of the eldest son, without reference to heirship of the body of the donee, or any particular wife of the donee ; without regard to heirs, male or female; to the half blood and the whole blood alike, and to heirs by the side

of females, who are in no way related to the donee or his family, except as next of kin to the person deceased.

The distinction between estates tail and estates in fee simple, which it was the great object of the statute *de donis* to maintain, being thus abolished, all the restrictions imposed by that statute upon the right of alienation are swept away, as being inconsistent with the nature of fee simple estates. And in the same way the distinction which existed before the statute *de donis* between estates in fee simple and estates in fee simple conditional, is also abolished, and the grantor of real estate is deprived of all power to limit the course of descent. If property descends at all it must descend according to our law to the children and next of kin. Any attempt, therefore, to limit the descent of estates here to any other course of descent must be futile. The restrictive words added to " heirs " " of the body," or " male or female of the body," or " by the body of any particular wife or husband," are simply inoperative. They create neither an estate tail nor a fee simple conditional, but an estate in fee simple, as if they had been entirely omitted.

Having thus seen the effect of the first of these statutes upon the principal object and purpose of the statute *de donis*, we may look at the effect of the second upon the means by which it was attempted to secure those objects, the prohibition of any alienation by the tenant, by which the estate should be prevented from descending to the prescribed heirs of the donee, or from reverting to the donor. Though not necessary to effect the object, because, as we have said, the unlimited power of alienation is inseparable from an estate in fee simple, these provisions serve to show that it was no part of the policy of our legislators to preserve estates tail.

As we understand this statute, the power is given to every person of full age, and sane, to dispose of any estate in lands, tenements or hereditaments by devise, or by any other act duly executed. Admitting that it applies to estates tail, and that it authorizes the person seized to dispose of the estate by deed or

will, it repeals entirely the restriction upon the power of aliena-
tion imposed by the statute *de donis*.

The phrase, " as well by his last will and testament as by any
other act duly executed," is capable of being understood as if it
were written, " as effectually by will as by any other act ;" but
besides that we regard this as not the usual signification of the
phrase ; it is entirely destitute of force as a qualification of the
power of devising. A tenant seized of any estate could convey
it by some other act duly executed. The tenant in tail could
effectually convey by fine or common recovery, and could of
course devise, if the clause is so understood ; but he could devise
equally well if it had been entirely omitted ; but if it is under-
stood as conferring or declaring the power to dispose both by
will and by any other act duly executed, the clause has force and
significance, and we can see why it should have found a place in
the statute. It is clear that significant words in a statute are
not to be rejected or rendered ineffectual by construction, but
the statute is to be so read as to give to every part its due weight.
*Hibbard* v. *Hurlbut*, 10 Vt. 178 ; *Drew* v. *Drew*, 8 Foster 494.

The same principle applies to what is indeed the great ques-
tion relative to these statutes. Do they apply to the case of
estates tail ? In this respect they may be considered together,
as they were passed on the same day, and as they are a revision
of a single statute of earlier date. The natural as well as the
technical meaning of the language used, applies to estates tail as
strongly as to estates in fee. The words, " when any person shall
die seized of lands, tenements or hereditaments," of the one stat-
ute, and " every person lawfully seized of *any* estate in lands,
tenements or hereditaments," of the other, cannot be limited to
estates in fee simple merely. A tenant in tail is " seized "
equally as a tenant in fee simple ; his seizin is of an estate in
lands, &c., and he is properly said to be seized of lands, tene-
ments, &c., like a tenant in fee simple, and his estate is an " her-
editament," or an " inheritance," as it is styled in one of these
statutes, like a fee simple. The language is equally applicable
to both estates, and we see no reason why, if we were to judge

Jewell *v.* Warner.

by the terms of this statute alone, it should not be extended to both.

But these statutes were framed upon the provincial statute of 4 George I., (Province Laws, 1771, p. 104.) This statute provided " that every person lawfully seized of any lands, tenements or hereditaments, within this Province, *in his own proper right in fee simple*, shall have power to give, dispose and devise, as well by his last will and testament in writing, as otherwise by any other act executed in his life, all such lands, tenements and hereditaments, to and among his children, or others, as he shall think fit, at his pleasure. And if no such disposition, gift or devise be made by the owner of any such lands, tenements or hereditaments, the same shall be subject to a division with his personal estate, and be alike distributed according to the rules hereinafter expressed for intestate estates." These rules provide for the distribution equally to the children and those who represent them, except that the eldest son is to have two shares, or a double portion.

The language of the provincial statute is changed by the statutes of 1789 in a point most essential to the construction, and in a way which could not be accidental.* The words, *in his own proper right in fee simple*, are omitted, and the words, *of any estate*, inserted in one of the statutes, so as to make the original phrase, " seized of any lands, tenements or hereditaments, in his own proper right in fee simple," read in that act, " *seized of any estate in lands, tenements or hereditaments*," and in the other, " seized of lands, tenements or hereditaments." The provision which in the early statute was confined to estates in fee simple, is extended to any estate in lands, &c., of which a person may be seized. There was no estate in any hereditament but an estate tail, which could be included in the broader language of the later

---

* It does not seem probable that the language of this act was not well weighed, and its meaning carefully considered, when we consider that the committee to draft public bills comprised Messrs. J. Sullivan, J. Smith, W. Plumer, and P. Green, of the House, and J. Pickering, of the Senate; five of the most eminent lawyers of the State.

statutes, and it must be held that they apply to such estates. Unless it is so construed no effect can be given to the change.

What was there left of the statute *de donis* and of estates tail, after the passage of these acts of 1789? Lands conveyed by such terms as in England would make an estate tail, were here liable to be conveyed by the tenant, as there, by fine and recovery; and by *any* act duly executed in his life were devisable by the tenant at his pleasure, were chargeable with his debts after his death, and could not descend to the heir *per formam doni*, nor revert to the grantor for default of such heirs, and must descend to the children equally, or to the next of kin in default of children. In fact, by the descent to heirs generally, they were become estates in fee simple, and as such liable to alienation by deed or levy. Not one object of the statute *de donis* remained; no characteristic of an estate tail continued to exist; and no other conclusion can be drawn than that the statute *de donis* was impliedly repealed, and estates tail finally abolished.

The policy of our institutions has remained the same since 1789 to the present time, as is shown by the revision of these statutes in 1822, and in 1842, without change, and by the statute of 1837, which, though in our view unnecessary, was useful in removing the doubts then existing.

The conclusion to which we have arrived is the same adopted by Chancellor *Kent* as long ago as 1836. See 4 Com. 15, n. b.

The action of formedon in the descender being applicable only to estates tail, of course fell with them, and this action consequently cannot be maintained.

The questions arising on the plaintiff's motion, being immaterial, have not been considered.

*Judgment for the plaintiff.*